UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIA DEVITRI, EVA GRASJE, SYANE KALOH, JOHN LONDA, MELDY LUMANGKUN, MARTIN LUMINGKEWAS, MEIVE LUM- INGKEWAS, TERRY ROMBOT, AGUS SETIAWAN, FREDDY SOMBAH, POPPY SOMBAH, and all other individuals similarly situated, <br><br> *Petitioner-Plaintiffs,* <br><br> v. <br><br> CHRIS M. CRONEN, Boston Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; TIMOTHY STEVENS, Manchester Sub-Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; and ELAINE C. DUKE, Acting Secretary of the U.S. Department of Homeland Security, <br><br> *Respondent-Defendants.* | Civil Action No. <br><br> 17-cv-11842-PBS |
| TERRY HELMUTH ROMBOT, <br><br> *Petitioner,* <br><br> v. <br><br> ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, <br><br> *Respondent.* | Civil Action No. <br><br> 17-cv-11577-PBS |

MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER
PERMITTING REMOTE ACCESS TO ELECTRONIC COURT FILINGS
PURSUANT TO FRCP 5.2(c) ("OPEN THE DOCKET")

John A. Hawkinson, a freelance news reporter writing for *Cambridge Day*, respectfully submits this memorandum in support of his motion for an order allowing the public to

remotely access non-sealed electronic court filings on PACER in these cases pursuant to Fed. R. Civ. P. 5.2(c).

In other words, Hawkinson seeks to "open the docket" and make docket entries in this case available to the public and press by remote access through PACER.

These cases presents issues of significant concern to national immigration policy. Petitioner-plaintiffs Devitri, Rombot, et al. are Indonesian nationals who claim to have resided peacefully in the United States for decades, and who voluntarily identified themselves to the Government about seven years ago as part of "Operation Indonesian Surrender," a government-sponsored program that encouraged undocumented Indonesian nationals to "come out of the shadows" and now face "imminent removal." Devitri petition at 1, 2. Petitioners are part of a group of roughly 70 similarly-situated individuals, they say. Petitioners were historically granted stays of removal, but begun being advised as of June that the Government is declining to continue to stay their removal, and has issued notices of revocation of release.

Petitioners claim they are likely at risk of persecution or torture on the basis of their Christian religious beliefs, if they are forced to return to Indonesia.

Federal immigration policy with respect to stays of removal is of especial concern in today's media and political cliamte, with the Trump administration's Sept. 5 announcement that it would end DACA — Deferred Action for Childhood Arrivals: an extremely prominent program implementing stays of removal for undocumented immigrants. Those affected by Operation Indonesian Surrender reflect a less prominent but similarly important aspect of immigration policy. The public deserves access to this case to understand the Government's policy choices and actions with respect to immigration policy.

The dispute presents a compelling story of how immigration issues work in practice "on the ground" in the United States generally and the greater Boston area in particular, and of the power of stays of removal to serve as determinative instruments that change the course of people's lives. The nature of the dispute and the political climate demonstrate the public's interest in these proceedings, and that the ability of the press to gather and

disseminate information about how the judicial branch resolves the dispute directly serves the First Amendment's "common core purpose of assuring freedom of communication on matters relating to the functioning of government." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980).

For the reasons set forth below, Hawkinson asks for the right to remotely access electronic public court records through PACER in these cases (*i.e.*, court records that have not been sealed) in order to better inform himself and the public at large of how the court resolves this dispute and, depending upon the contents of the court records, make them available to the public. The current lack of remote access prevents Hawkinson and other members of the media from reporting on court filings in a timely fashion, particularly when the filings are made close to or after the hours in which the clerk's office is open to the public. *Id.* This is especially true where, as here, the clerk's office's interpretation of the rule bars the media and public obtaining hardcopies of filing in the case, so the absence of remote electronic access is strongly felt.

# I. Argument

## A. These cases warrant an order permitting remote access under Rule 5.2(c)

Fed. R. Civ. P. 5.2(c) provides that, "*[u]nless the court orders otherwise, in an action ...* relating to an order of removal, to relief from removal, or to immigration benefits or detention, access to an electronic file" is limited to the parties and their attorneys. (*emphasis* added). The rule further provides that "any other person may have *electronic access* to the *full record at the courthouse*," but may have remote electronic access only to the docket and any opinion, order, judgment or other disposition of the court. (*emphasis* added)

The intent of Rule 5.2 is to "protect privacy and security" of documents, and subdivision (c) grants immigration cases "special treatment due to the prevalence of sensitive information

and the volume of filings." See Rule 5.2 Committee Notes on Rules—2007 (attached as Ex. A). The Notes explain that the limitation on remote electronic access in immigration cases is "due to the prevalence of sensitive information and the volume of filings."[1]

There is no doubt that some immigration case files contain sensitive, private information (as do some social security benefit cases, to which Rule 5.2(c) also applies).

Were the docket open, counsel might of course request to file under seal any sensitive information. Indeed, because of the public interest (counsel in *Devitri* cite coverage in the New Hampshire *Union Leader*. Devitri Emergency Motion for TRO, D.E. 2, at 2) and public access at the courthouse, counsel should already be exercising a similar degree of care. The rule does not effectively protect any private information in these cases' filings, it merely makes the process cumbersome for the public and press.

Rule 5.2(c)'s limitation on immediate, world-wide remote access to certain electronic judicial records does not reverse the historical presumptive right to inspect and copy public court records, a right that serves important public interests in a case of this magnitude.

The clerk's office's has adopted an interpretation that the rule prohibits not only remote electronic access, but also prohibits requests for hardcopies from the clerk's office counter. This means the absence of remote electronic access is especially significant — it is not merely that one of two methods by which a reporter away from the Court's public terminal may obtain a copy of a critical document. It is the *only* method.[2]

Finally, Rule 5.2(c) explicitly contemplates the Court ordering the docket opened ("Unless the court orders otherwise."). In applying Rule 5.2, courts routinely recognize the strong interest in public access to court records and balance that interest against the privacy in-

---

[1] The issue of voluminous filings in immigration cases, another underlying concern of the rule, does not appear to be relevant in these cases: the dockets together comprises a mere 33 filings – 17 in *Devitri* and 16 in *Rombot*. In any event, such a concern about volume is insufficient to overcome the public's compelling interest in this particular case.

[2] Seperately from these actions, Hawkinson intend in the near future to request the Court review this practice with respect to hardcopy policy in the near future. As a prerequisite for that review, Hawkinson surveyed the district courts within the First Circuit excluding Puerto Rico (because of its closure due to Hurricane Maria): none of the other districts has a policy or practice barring hardcopies of case documents in immigration cases. The Eastern District of New York also provides hardcopies at counter in immigration cases.

terests at stake. Here, those privacy interests are quite limited. See, e.g., *Skky, LLC v. Facebook, Inc.*, No. 16-cv-94, 2016 WL 3228175, D.E. 80 (D. Minn., June 10, 2016) (denying motion to file documents under seal under Rule 5.2 because the public right of access to documents outweighed limited privacy interests); *[Under seal] v. [Under seal]*, No. 16-cv-7820, 2017 U.S. Dist. LEXIS 128000, D.E. 53 (S.D.N.Y. Aug. 10, 2017) (finding defendant's claim of irreparable harm from public disclosure due to unsealing cannot overcome the common law presumption of public access to judicial documents).

In an immigration case of national prominence in this same District this winter, Judge Gorton granted a similar motion (by *The Boston Globe*) to open the docket. *Louhghalam v. Trump*, No. 17-cv-10154, D.E. 49 (D. Mass, Feb. 2, 2017) ("Motion allowed" endorsement).

## B. The public has a common law right to copy Court records.

"It is clear that the courts of this country recognize a general right to inspect and *copy* public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (*emphasis* added). See also *In re Providence Journal Co.*, 293 F.3d 1, 17 (1st Cir. 2002) ("Historically, the common-law right of access permitted the public to *copy the contents of written documents.*") (citing *United States v. Myers (In re Application of Na'l Broad. Co.)*, 635 F.2d 945, 950 (2d Cir. 1980) (*emphasis* added); *In re Globe Newspaper Co.*, 920 F.2d 88, 96 (1st Cir. 1990) ("The Supreme Court has recognized a historically based common law right to inspect and *copy* judicial records and documents.") (*emphasis* added).

This common law right of access is "no mere paper tiger." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987). The party seeking to restrict the public's common law right bears the "heavy burden" of proving "good cause" to overcome the presumption of public accessibility. *Id.* at 412–13; see also *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). A finding of good cause must be based on a "particular factual demonstration of potential harm and not on conclusory statements." *Anderson v.*

5

*Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). See also *Standard Fin. Mgmt.*, 830 F.2d at 412 ("[o]nly the most compelling reasons can justify non-disclosure of judicial records") (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir.1983)) (internal quotations omitted). Accordingly, a court "must carefully balance the competing interests that are at stake." *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 10 (1998).

"The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Standard Fin. Mgmt.*, 830 F.2d at 410. In such cases, the "threshold showing required for impoundment of the materials is correspondingly elevated," and the interests asserted in support of impoundment must be balanced against the public's "substantial stake and interest in the proceedings at bar." *Standard Fin. Mgmt.*, 830 F.2d at 412. See also *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

The D.C. Circuit gave strong affirmation to the common law right of public access early last month: "The right of public access is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch. Although the right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests." *Metlife, Inc. v. Fin. Stability Oversight Council, Better Markets, Inc.*, No. 16-5188, 2017 U.S. App. LEXIS 13914 at *2 (D.C. Cir., Aug. 1, 2017).

The facts here overwhelmingly favor recognition of the public's common law right to inspect *and copy* court records. The case concerns a matter of national importance involving the legality of governmental conduct in the area of immigration, interest in which is heightened at present.

### C. The public has a first amendment right to copy Court records

The United States Supreme Court has considered two complementary factors in determining whether a First Amendment right of access attaches to a judicial proceeding. The first

6

consideration, the "experience" factor, considers whether there is a historical tradition of openness to the proceeding at issue. See *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982); *Richmond Newspapers*, 448 U.S. at 589 (Brennan, J., concurring); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 505-08 (1984) (*"Press-Enterprise I"*); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*"Press-Enterprise II"*). The second consideration, the "logic" factor, considers whether public access plays a positive role in the functioning of the governmental process at issue by, for example, enhancing the quality and safeguarding the integrity of the system, fostering an appearance of fairness, and permitting the public to participate in and serve as a check upon the judicial process — "an essential component in our structure of self government." *Globe*, 457 U.S. at 606 (internal citation omitted); *Press-Enterprise I*, 464 U.S. at 508-10; *Press-Enterprise II*, 478 U.S. at 8-9.

Applying these principles, the First Circuit has held that the First Amendment provides the public with a right of access to court records in criminal cases. See *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497 (1st Cir. 1989). The basis for this right is that without access to documents the public often would not have a "full understanding" of the proceeding and therefore would not always be in a position to serve as an effective check on the system. 868 F.2d at 502. See also *In re Globe Newspaper Co.*, 729 F.2d 47, 52, 59 (1st Cir. 1984).

Application of the experience and logic factors to these cases similarly compels the conclusion that the public has a First Amendment right of access to court records of immigration proceedings. "We have long recognized that deportation is a particularly severe 'penalty,'" and that, although removal proceedings are civil in nature, "deportation is nevertheless intimately related to the criminal process." *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010). See generally *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1067-71 (3d Cir. 1984) (applying two part test of history and functioning and finding First Amendment right of access to civil trials); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) (First Amendment protects public's right of access to records of civil proceedings); *Hartford Courant v. Pellegrino*, 371 F.3d 49 (2d Cir. 2004) (First Amendment provides right

of access to docket sheets); *Virginia Department of State Police v. The Washington Post*, 386 F.3d 567 (4th Cir. 2004) (recognizing First Amendment right of access to investigatory police records filed in civil case).

As to the experience factor, the historical tradition of access to civil judicial proceedings and records is beyond dispute. See *Nixon*, 453 U.S. at 597 ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents. ... In contrast to the English practice, American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit.") (internal citation and footnotes omitted). To paraphrase the Supreme Court, "Whether the First Amendment right of access to [civil judicial records] can be restricted in the context of any particular [civil case] depends not on the historical openness of that type of [civil case] but rather on the state interests assertedly supporting the restriction." *Globe Newspaper*, 457 U.S. at 605 n.13. See also *In re Boston Herald, Inc.*, 321 F.3d 174, 182 (1st Cir. 2003) (court was "unpersuaded" that both the "history" and "logic" factors must be met for First Amendment right of access to apply). The constitutional right of access to records of civil proceedings similarly applies in full force to these cases.

In addition to the "favorable judgment of experience," access to the records of civil cases unquestionably plays a positive role in the functioning of the judicial process, the second factor to be considered in determining whether the First Amendment right of access applies. *Globe*, 457 U.S. at 605 (citation and internal quotation omitted). As the Supreme Court has stated, "in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases." *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n. 15 (1979).

Public access to court documents in civil cases "allows the citizenry to 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.'" *Standard Fin. Mgmt.*, 830 F.2d at 410. See also *Publicker*, 733 F.2d at 1070 ("Public access to civil trials, no less than criminal trials, plays an important role in the participation and

the free discussion of governmental affairs."). "Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. ... Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Amodeo*, 71 F.3d at 1048.

Recognition of the public's constitutional right of access to court records does not mean that the public never may be denied access to any portion of any record under any circumstances whatsoever. It does mean, however, that the barriers to impoundment are extraordinarily high.

First, "[w]here ... the state attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest." *Globe Newspaper*, 457 U.S. at 506–507; *Press-Enterprise II*, 478 U.S. at 13–14; *Pokaski*, 868 F.2d at 505. In addition, any sealing order must be "narrowly tailored to serve that interest." *Id.*

The First Amendment also requires that any docket restrictions must effectively serve the interest asserted by the proponents of closure. *Press-Enterprise II*, 478 U.S. at 13–14 (restriction on public access must be "essential" to prevent harm "that closure would prevent"); *Globe Newspaper*, 457 U.S. at 607 n.19, 610 (assessing effectiveness of closure order in protecting juvenile rape victims required distinguishing injury caused by testifying in general from incremental injury caused by testifying in the presence of the press); *Pokaski*, 868 F.2d at 505 ("the means chosen by the state must effectively promote the statute's objectives").

Finally, in those rare circumstances where access to a judicial record may be limited, the justification for the restriction must be articulated in specific findings made by the trial court sufficient to enable appellate review. *Richmond Newspapers*, 448 U.S. at 581; *Press-Enterprise II*, 478 U.S. at 13–14.

Hawkinson respectfully submits that, on the facts of these cases, the public's First

Amendment right to inspect and copy the court records overcomes any asserted competing interest, regardless of whether remote electronic access under Rule 5.2(c) is permitted.

## II. Local Rule 7.1(a)(2) Certification

Hawkinson has conferred with attorneys for Plaintiff-Petitioners Devitri et al. who do not assent and reserve the right to oppose.

Counsel for sole petitioner Rombot in 17-cv-11577 does not consent, out of an abundance of caution for his client's rights (esp. with respect to asylum), and acknowledging the difficulties reaching his client who is currently incarcerated. (Rombot is represented by different counsel in *Devitri et al. v. Cronen*, 17-cv-11842).

Counsel for Government Respondents does not consent "at this time." Respondents anticipate filing "significant immigration-related information" potentially "subject to protection under 8 C.F.R. §208.6" (limiting disclosure to third parties in asylum cases).

## III. Response to opposing counsel / Logistics

Hawkinson is mindful of petitioners counsel's duty to their clients, and that a full review may not have been feasible in the time allowed under LR7.1(a)(2) consultation.

Hawkinson proposes that this court allow the motion at this time for (1) newly filed documents in these cases, as well as for (2) the initial case opening documents (petition-complaint in Devitri and petition in Rombot), but (3) retain the restriction on other existing filed documents during any potential motion practice regarding this motion to open the docket. Hawkinson asks this court to set a deadline for counsel to move to seal any of the current filings and file redacted versions on the public docket, after which time any remaining documents should be made public.

Hawkinson also asks this court to require motions to seal be filed on the public docket as a general matter, and that if any such motions to seal themselves contain truly confidential

material, that a redacted public version be required to be filed contemporaneous with the sealed version. And similarly that if such motions to seal are granted, that the parties filing sealed documents be required to file redacted versions for the public.

Such an open posture is stronger than the procedure outlined in Judge Saris's Standing Procedural Civil Order Re: Sealing Court Documents (May 15, 2015), but the public and media interest in these cases and national immigration policy warrant no less.

With respect to the Government's concern about confidential asylum information, the Government should be advised that to the extent it has a duty to protect such information, the protections of FRCP 5.2(c) are insufficient, and it should either move to seal such information or should not be filing it with the court at all. In any event, such arguments are not relevant to the motion to open remote PACER access.

Of course, Hawkinson reserves the right to oppose future motions to seal if there is good cause to do so.

## IV. Conclusion

For the foregoing reasons, Hawkinson requests that the court enter an order allowing the public to remotely access non-sealed electronic court filings on PACER in these cases pursuant to Fed. R. Civ. P. 5.2(c).

(pending) INTERVENOR,
JOHN A. HAWKINSON, pro se

John A. Hawkinson
Box 397103
Cambridge, MA 02139-7103
617-797-0250
jhawk@MIT.EDU

Dated: September 28, 2017

## CERTIFICATE OF SERVICE

I, John A. Hawkinson, do hereby certify that a true copy of the above document was served upon the attorneys of record for each party to these actions by electronic mail on September 28, 2017, having previously received written consent for electronic service pursuant to FRCP 5(b)(2)(E), to:

Ronaldo Rauseo-Ricupero
Nixon Peabody, LLP
*rrauseoricupero@nixonpeabody.com*

Sydney Pritchett
Nixon Peabody, LLP
*spritchett@nixonpeabody.com*

W. Daniel Deane
Nixon Peabody, LLP
*ddeane@nixonpeabody.com*

William A. Hahn
Hahn & Matkov
*hahnandmatkov@gmail.com*

and by hand delivery to:

Michael P. Sady
States Attorney's Office
John Joseph Moakley Federal Courthouse
1 Courthouse Way
Suite 9200
Boston, MA 02210

Rayford A. Farquhar
United States Attorney's Office
John Joseph Moakley Federal Courthouse
1 Courthouse Way
Suite 9200
Boston, MA 02210

and by first class mail to:

Vinita B. Andrapalliyal
United States Department of Justice
P.O. Box 868, Benjamin Franklin Station
Washington, DC 20530

/s/ John A. Hawkinson

John A. Hawkinson
September 28, 2017