# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

LIA DEVITRI,  EVA GRASJE, SYANE KALOH, JOHN LONDA, MELDY LUMANGKUN, MARTIN LUMINGKEWAS, MEIVE LUMINGKEWAS, TERRY ROMBOT, AGUS SETIAWAN, FREDDY SOMBAH, POPPY SOMBAH, HERU KURNIAWAN, DEETJE PATTY, ROY ANTOUW, DEBBY WALANDOW, ARNOLD BUDIHARDJO, VIRAKE BUDIHARDJO, MICHAEL EMAN, HESTI RIMPER, GREACE MAMBO, SONNY MAMBO, EDDY PANJAITAN, LINARIA SINAGA, CHRISTIAN PENTURY, ELVIS SEPANG, ESTER ARINA, YAYHA BANTURINO, JODY SOEBAGYO, PINTA CHRISMILIAN, NICO FNU, WILLY MANDAGI, ADELE TUMBEL, JAMES TOMBENG, JANE PAJOW, GOLTODO PARAPAT, MARGARIET SITOMPUL, SERO RARUNG, STEPHEN RARUNG, HEFRI SENDUK, LAURA RONDONUWU, WENDA CHAPMAN (a/k/a WENDA TAN), SAMUEL WONDAL, JACKLYN LELE, MARKUS SUBROTO, TAMARA TASYA, FELICIA LUKMAN, KAJONO GUNARDI, LENY SUTANTO, BOBBY CANDRA, FRANKY MASSIE, SANDRA SAHERTIAN, and all other individuals similarly situated,

               Petitioners/Plaintiffs,

v.

CHRIS M. CRONEN
Boston Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement

TIMOTHY STEVENS
Manchester Sub-Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement

ELAINE C. DUKE
Acting Secretary of the U.S. Department of Homeland Security

               Respondents/Defendants.

Civil Action
No. 17-11842-PBS

## SECOND AMENDED CLASS PETITION FOR WRITS OF HABEAS CORPUS AND MANDAMUS AND CLASS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

4838-6528-5969.1

## INTRODUCTION

1.       Petitioners/Plaintiffs are Indonesian nationals who, having resided in the United States peaceably for decades, now face imminent removal to Indonesia where they face the very real prospect of persecution, torture, or death due to their Christian faith. Removals for these individuals, who voluntarily identified themselves to United States Immigration and Customs Enforcement ("ICE") as part of its "Operation Indonesian Surrender" program, are scheduled to occur within the next four weeks (and, for Petitioners Freddy Sombah and Poppy Sombah, this Wednesday, September 27, 2017).  Petitioners/Plaintiffs pray that this Court stay these removals because ICE has denied them the due process protections guaranteed by the Fifth Amendment of the United States Constitution by attempting to remove them on a timeframe that prevents them from exercising their right to seek the immigration relief to which they are entitled through motions to reopen their immigration cases. Accordingly, Petitioners/Plaintiffs seek to represent themselves and a class of similarly situated individuals for the purpose of ensuring that everyone in the class is afforded their Fifth Amendment due process protections.

2.       Petitioners/Plaintiffs and the members of the putative class they seek to represent had been permitted to remain in the United States despite immigration infractions, such as visa overstays, through "Operation Indonesian Surrender," a program established in roughly 2009-2010,  that specifically encouraged Indonesian Christian community members who were subject to final orders of removal to "come out of the shadows," report to ICE, and voluntarily submit to Orders of Supervision.  Petitioners/Plaintiffs accepted that invitation. They are part of roughly 70 individuals remaining in the program, who were living peaceably in their communities pursuant to those Orders of Supervision.  That all changed this June, when the Boston ICE Field Office, suddenly began issuing Denials of Stay of Removal and/or Notices of Revocation of Release.

2

3.      Upon information and belief, Petitioners/Plaintiffs now face imminent removal to Indonesia, a country which they left years ago, and where even the U.S. State Department restricts its own personnel from traveling freely. U.S. Department of State, International Travel Country Reports (April 17, 2017), *available at*   https://travel.state.gov/content/passports/en/country/indonesia.html.

4.      U.S. law prohibits the removal of individuals to countries where they would face a likelihood of persecution or torture. Yet despite the clear danger that many of these individuals face in Indonesia due to their Christian faith, ICE is attempting to deport them based on outstanding removal orders that did not take account of intervening changed circumstances which should entitle them to protection. For example, Christians are widely recognized as targets of brutal persecution in Indonesia. The U.S. Commission on International Religious Freedom included Indonesia in its 2017 list of countries of particular concern as a "Tier 2" country, a group of countries which, while less repressive than North Korea, includes Iraq, a nation to which deportations of Christians has been halted by another federal court. *Hamama v Adducci*, No. 17-cv-011910, 2017 WL 2684477 (E.D. Mich. June 22, 2017); U.S. Commission on International Religious Freedom, "Indonesia," 2017 Annual Report, *available at* http://www.uscirf.gov/sites/default/files/Indonesia.2017.pdf.

5.      The Pew Research Center rated Indonesia high in both government restrictions and social hostilities in its 2017 Report on global religious restrictions. "Global Restrictions on Religion Rise Modestly in 2015, Reversing Downward Trend," Pew Research Center (Apr. 11, 2017), *available at* http://www.pewforum.org/2017/04/11/global-restrictions-on-religion-rise-modestly-in-2015-reversing-downward-trend/.

4838-6528-5969.1

6.      Despite these dangers Petitioners/Plaintiffs and other similarly situated individuals, whose orders of removal were entered years ago, are facing immediate deportation to Indonesia without any chance to explain the present status of the dangers they would currently face.

7.      Petitioners/Plaintiffs cannot be removed to Indonesia without being afforded a process to determine whether, based on current conditions and circumstances, the danger they would face entitles them to protection from removal. Specifically, Petitioners/Plaintiffs ask this Court to issue an order preventing their removal to Indonesia until they are provided with their due process right to a determination of their entitlement to protection in light of changed country conditions or other entitlement to relief.

8.      Finally, Petitioners/Plaintiffs, on behalf of themselves and the similarly situated members of the putative class, challenge any actual or anticipated detention, which bears no reasonable relationship to any legitimate purpose. Because they cannot be lawfully removed until they have had an opportunity to renew their requests for protection, their detention is not necessary to effectuate their imminent removal.  Petitioners/Plaintiffs ask this Court to order their immediate release, absent an individualized determination that they pose a danger or flight risk that requires their detention.

9.      Because Petitioners/Plaintiffs are a subset of a larger community impacted by ICE's sudden and arbitrary change in policy, they seek to obtain relief for themselves and for a class of similarly situated individuals—Christian Indonesians that voluntarily participated in "Operation Indonesian Surrender" who now find themselves subject to Notices of Revocation of Relief or Denials of Stays issued by the Boston Field Office of Enforcement and Removal

4

Operations, of U.S. Immigration and Customs and Enforcement, that will be executed within weeks.

## JURISDICTION

10.     This case arises under the Fifth Amendment to the United States Constitution; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*; the regulations implementing the INA's asylum provisions; the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85, the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), 8 U.S.C. § 1231 note, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

11.     This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241 *et seq.*, and Art. I § 9, cl. 2 of the United States Constitution (Suspension Clause). This Court may also exercise jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (mandamus statute), 5 U.S.C. § 701 *et seq.* (Administrative Procedures Act); Art. III of the United States Constitution; Amendment V to the United States Constitution; and the common law. This Court may grant the relief requested herein pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

12.     This Court has recently held that an alien's status as subject to an Order of Supervision is in "custody" for purposes of habeas corpus jurisdiction. *Ali v. Napolitano*, Civ. No. 12-cv-11384-FDS, 2013 U.S. Dist. LEXIS 104964, *10-13 (July 26, 2013) (Saylor, J.); *see also generally Mendonca v. INS*, 52 F. Supp. 2d 155, 159 (D. Mass.), *aff'd*, 201 F.3d 427 (1st Cir 1999) (holding that "custody" includes persons subject to a final order even if they are not in physical custody) (Saris, J.).

5

13.     This action is not barred by 8 U.S.C. § 1252(b)(9) (the REAL ID Act of 2005) because this Court may review a question that is independent of the removal process or which cannot be addressed through the available administrative process. *See generally Aguilar v. United States Immigration and Customs Enforcement Division of the Department of Homeland Security*, 510 F.3d 1, 11 (1st Cir. 2007); *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 468 (D. Mass. 2010) (finding that the court may review whether detention violates the Due Process clause of the Fifth Amendment). The present action does not challenge the underlying orders of removal. Rather, it seeks to challenge a condition of Petitioners'/Plaintiffs' custody, specifically, ICE's abrupt change in policy regarding participants in "Operation Indonesian Surrender" and the unfairly compressed timetable of the issuance of the Denials of Stays and/or Notices of Revocation of Release, which are documents attendant to their Orders of Supervision that are preventing Petitioners/Plaintiffs from exercising their due process rights to challenge their final orders of removal in the proper forum: the Immigration Court.

## VENUE

14.     Venue lies in the District of Massachusetts, the judicial district in which the Boston ICE Field Office Director is located. *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000). The Boston ICE Field Office Director issued the Denials of Stay of Removal, and the Orders of Supervision were issued under that Field Office's supervision.

## PARTIES

15.     Petitioner/Plaintiff LIA DEVITRI is a national of Indonesia of Christian faith who is subject to a final order of removal.  She has been living without incident since July 2010 under an Order of Supervision which she understood to have been issued under the auspices of

Operation Indonesian Surrender.  She was ordered to report to ICE on October 10, 2017 with a plane ticket to depart to Indonesia on November 10, 2017.  She is the wife of Petitioner/Plaintiff AGUS SETIAWAN; they have four U.S. citizen children, one of whom suffers from cerebral palsy.

16.     Petitioner/Plaintiff EVA GRASJE is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and has been subject to a final order of removal since 2007. She was living under an Order of Supervision without incident since September 2010. Without any explanation, she received a Denial of Stay on February 28, 2017 signed by Respondent/Defendant CRONEN from the Boston ICE Field Office, and has been ordered to report to the Manchester Sub-Office on October 6, 2017 with a plane ticket to depart to Indonesia on November 6, 2017.  She is the wife of Petitioner/Plaintiff MELDY LUMANGKUN; they have one non-U.S. citizen child and two U.S. citizen children, one of whom is hearing impaired. She is a deacon in the Rochester Indonesian Seventh Day Adventist Church.

17.     Petitioner/Plaintiff SYANE KALOH is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and has been subject to a final order of removal since 2005.  She was living under an Order of Supervision without incident since September 2010.  Without any explanation, she received a Denial of Stay on September 5, 2017 signed by Respondent/Defendant CRONEN from the Boston ICE Field Office, and has been ordered to report to the Manchester Sub-Office on October 13, 2017 and to depart to Indonesia on November 9, 2017. She is the wife of Petitioner/Plaintiff JOHN LONDA; they have one non-U.S. citizen child who was granted relief under Deferred Action for Childhood Arrival ("DACA"), and one U.S. citizen child, age 14.

7

18.     Petitioner/Plaintiff JOHN LONDA is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and has been subject to a final order of removal since 2007.   He was living under an Order of Supervision without incident since September 2010. Without any explanation, he received a Denial of Stay on September 5, 2017, signed by Respondent/Defendant CRONEN from the Boston ICE Field Office,  and has been ordered to report to the Manchester Sub-Office on October 13, 2017 with a plane ticket to depart to Indonesia on November 9, 2017. He is the husband of Petitioner/Plaintiff SYANE KALOH; they have one non-U.S. citizen child who was granted relief under DACA, and one U.S. citizen child, age 14.

19.     Petitioner/Plaintiff MELDY LUMANGKUN is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and has been subject to a final order of removal since 2007.  He was living under an Order of Supervision without incident since September 2010. Without any explanation, he received a Denial of Stay on February 28, 2017 signed by Respondent/Defendant CRONEN from the Boston ICE Field Office, and has been ordered to report to the Manchester Sub-Office on October 6, 2017 with a plane ticket to depart to Indonesia on November 6, 2017.   He is the husband of Petitioner/Plaintiff EVA GRASJE; they have one non-U.S. citizen child and two U.S. citizen children, one of whom is hearing impaired. He is an elder in the Rochester Indonesian Seventh Day Adventist Church.

20.     Petitioner/Plaintiff MARTIN LUMINGKEWAS is a national of Indonesia of Christian faith who is subject to a final order of removal.  He has been living  for several years without incident under an Order of Supervision, which he understood to have been granted under the auspices of Operation Indonesian Surrender. Without any explanation, during the week of

September 18, 2017, he received a Denial of Stay signed by Respondent/Defendant CRONEN from the Boston ICE Field Office, and has been ordered to report to the Manchester Sub-Office on October 13, 2017 with a plane ticket to depart to Indonesia on November 9, 2017.  He is the husband of Petitioner/Plaintiff MEIVE LUMINGKEWAS; they have three U.S. citizen children, one of whom, age 15, is autistic and requires constant supervision and special educational programs.

21.     Petitioner/Plaintiff MEIVE LUMINGKEWAS is a national of Indonesia of Christian faith who is subject to a final order of removal.  She has been living  for several years without incident under an Order of Supervision, which she understood to have been granted under the auspices of Operation Indonesian Surrender. She imminently expects to receive a Denial of Stay signed by Respondent/Defendant CRONEN from the Boston ICE Field Office; she has been ordered to report to the Manchester Sub-Office on October 13, 2017 with a plane ticket to depart to Indonesia on November 9, 2017.   She is the wife of Petitioner Petitioner/Plaintiff MARTIN LUMINGKEWAS; they have three U.S. citizen children, one of whom, age 15, is autistic and requires constant supervision and special educational programs.

22.     Petitioner/Plaintiff TERRY ROMBOT is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision, but was issued a Notice of Revocation of Release on August 1, 2017 signed by Respondent/Defendant CRONEN from the Boston ICE Field Office. He is presently in immigration custody in Plymouth County jail, and is the subject of related case in this District, *Rombot v. Cronen*, *et al.,* No. 17-cv-11577-PBS.

23.     Petitioner/Plaintiff AGUS SETIAWAN is a national of Indonesia of Christian faith who is subject to a final order of removal.  He was living without incident since July 2010

under an Order of Supervision which he understood to have been granted under the auspices of Operation Indonesian Surrender. He has been ordered to report to ICE on October 10, 2017 with a plane ticket to depart to Indonesia on November 10, 2017.   He is the husband of Petitioner/Plaintiff LIA DEVITRI; they have four U.S. citizen children, one of whom suffers from cerebral palsy.

24.     Petitioner/Plaintiff FREDDY SOMBAH is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal. He was living under an Order of Supervision without incident since September 2010. Without any explanation, he received a Denial of Stay of Removal on September 18, 2017 signed by Respondent/Defendant CRONEN from the Boston ICE Field Office, and has been ordered to report to the Manchester Sub-Office on September 25, 2017 with a plane ticket to depart to Indonesia on September 27, 2017.   He is the husband of Petitioner/Plaintiff POPPY SOMBAH; their son was granted relief under DACA.   He suffers from various serious medical conditions.

25.     Petitioner/Plaintiff POPPY SOMBAH is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.   She was living under an Order of Supervision without incident since September 2010. Without any explanation, she received a Denial of Stay of Removal on September 18, 2017 signed by Respondent/Defendant CRONEN from the Boston ICE Field Office, and has been ordered to report to the Manchester Sub-Office on September 25, 2017 with a plane ticket to depart to Indonesia on September 27, 2017.   She is the wife of Petitioner/Plaintiff FREDDY SOMBAH; their son was granted relief under DACA.   She suffers from serious medical conditions.

10

26.     Petitioner/Plaintiff HERU KURNIAWAN is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision without incident since August 2010. On August 1, 2017, he was ordered to report to the Manchester Sub-Office on September 25, 2017 with a plane ticket to depart to Indonesia on September 27, 2017.  He is the husband of Petitioner/Plaintiff DEETJE PATTY; they have a U.S. citizen daughter, age 34. Petitioner/Plaintiff HERU KURNIAWAN may be eligible for permanent residence based upon his immediate relative relationship with his daughter, and he has applied for such relief.  This status has permitted Petitioner/Plaintiff HERU KURNIAWAN to file a motion to reopen his final order of removal and may permit him to seek permanent residence, but no administrative stay of removal has been granted to him.

27.     Petitioner/Plaintiff DEETJE PATTY is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  She was living under an Order of Supervision without incident since August 2010. On August 1, 2017, she  was ordered to report to the Manchester Sub-Office on September 25, 2017 with a plane ticket to depart to Indonesia on September 27, 2017.  She is the wife of Petitioner/Plaintiff HERU KURNIAWAN; they have a U.S. citizen daughter, age 34. Petitioner/Plaintiff DEETJE PATTY may be eligible for permanent residence based upon her immediate relative relationship with her daughter and she has applied for such relief. This status has permitted Petitioner/Plaintiff DEETJE PATTY to file a motion to reopen her final order of removal and may permit her to seek permanent residence, but no administrative stay of removal has been granted to her.

4838-6528-5969.1

28.     Petitioner/Plaintiff ROY ANTOUW is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision without incident since September 3, 2010.  He was ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on October 7, 2017.  He is the husband of Petitioner/Plaintiff DEBBY WALANDOW; they have a U.S. citizen son, age 15, and daughter who will turn 21 years old on December 31, 2017.  Upon his elder daughter's birthday, Petitioner/Plaintiff ROY ANTOUW may be eligible for permanent residence based upon his immediate relative relationship with his daughter. Immediate relative classification would permit Petitioner/Plaintiff ROY ANTOUW to file a motion to reopen his final order of removal and seek permanent residence.

29.     Petitioner/Plaintiff DEBBY WALANDOW is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.   She was living under an Order of Supervision without incident since September 3, 2010.  Although she has been ordered to report to ICE on October 16, 2017, she has purchased a plane ticket to depart to Indonesia with her husband, Petitioner/Plaintiff ROY ANTOUW, on October 7, 2017.   Petitioners/Plaintiffs DEBBY WALANDOW and ROY ANTOUW have a U.S. citizen son, age 15, and daughter who will turn 21 years old on December 31, 2017.   Upon her elder daughter's birthday Petitioner/Plaintiff DEBBY WALANDOW may be eligible for permanent residence based upon her immediate relative relationship with her stepdaughter.   Immediate relative classification would permit Petitioner/Plaintiff DEBBY WALANDOW to file a motion to reopen her final order of removal and seek permanent residence.

4838-6528-5969.1

30.     Petitioner/Plaintiff ARNOLD BUDIHARDJO is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision without incident since September 3, 2010.  He was ordered to report to ICE on October 3, 2017 with a plane ticket to depart to Indonesia on October 4, 2017.  He is the husband of Petitioner/Plaintiff VIRAKE BANTURINO; they have a U.S. citizen daughter, age 14.

31.     Petitioner/Plaintiff VIRAKE BUDIHARDJO is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  She was living under an Order of Supervision without incident since September 3, 2010.  She was ordered to report to ICE on October 3, 2017 with a plane ticket to depart to Indonesia on October 4, 2017.  She is the wife of Petitioner/Plaintiff ARNOLD BUDIHARDJO; they have a U.S. citizen daughter, age 14.

32.     Petitioner/Plaintiff MICHAEL EMAN is a national of Indonesia of Christian faith who is subject to a final order of removal.  He was living without incident since May 20, 2010, under an Order of Supervision which he understood to have been issued under the auspices of Operation Indonesian Surrender.  He was ordered to report to ICE on October 4, 2017 with a plane ticket to depart to Indonesia on October 5, 2017.  He is the husband of Petitioner/Plaintiff HESTI RIMPER; they have two U.S. citizen children, ages 11 and 14.

33.     Petitioner/Plaintiff HESTI RIMPER is a national of Indonesia of Christian faith who is subject to a final order of removal.  She was living without incident since May 20, 2010 under an Order of Supervision which she understood to have been granted under the auspices of Operation Indonesian Surrender. She has been ordered to report to ICE on October 6, 2017 with

a plane ticket to depart to Indonesia on November 6, 2017.  She is the wife of Petitioner/Plaintiff MICHAEL EMAN; they have two U.S. citizen children, ages 11 and 14.

34.     Petitioner/Plaintiff GREACE MAMBO (a/k/a/ GREACE RAWUNG) is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  She was living under an Order of Supervision without incident since September 2, 2010.  She has been ordered to report to ICE on October 4, 2017 with a plane ticket to depart to Indonesia on October 5, 2017.  She is the ex-wife of Petitioner/Plaintiff SONNY MAMBO.  She has three U.S. citizen children, ages 4, 12, and 15, who have lived their entire lives in the United States, speak English, and barely understand Indonesian language or culture.  Petitioner/Plaintiff MAMBO also anticipates that she will be appointed legal guardian of her U.S. citizen niece on October 17, 2017.

35.     Petitioner/Plaintiff SONNY MAMBO is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision without incident since September 2, 2010.  He has been ordered to report to ICE on October 4, 2017 with a plane ticket to depart to Indonesia on October 5, 2017.  He is the ex-husband of Petitioner/Plaintiff GREACE MAMBO. He has three U.S. citizen children, ages 4, 12, and 15, who have lived their entire lives in the United States, speak English, and barely understand Indonesian language or culture.

36.     Petitioner/Plaintiff EDDY PANJAITAN is a national of Indonesia of Christian faith who is subject to a final order of removal.  He has been living without incident since November 3, 2013 under an Order of Supervision which he understood to have been granted under the auspices of Operation Indonesian Surrender.  He has been ordered to report to ICE on

October 6, 2017 with a plane ticket to depart to Indonesia on October 7, 2017.  He is the husband of Petitioner/Plaintiff LINARIA SINAGA; they have two U.S. citizen children, ages 7 and 10.

37.     Petitioner/Plaintiff LINARIA SINAGA is a national of Indonesia of Christian faith who is subject to a final order of removal.  She has been living without incident since November 3, 2013 under an Order of Supervision which she understood to have been granted under the auspices of Operation Indonesian Surrender.  She was ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on October 7, 2017.  She is the wife of Petitioner/Plaintiff EDDY PANJAITAN; they have two U.S. citizen children, ages 7 and 10.

38.     Petitioner/Plaintiff CHRISTIAN PENTURY is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision without incident since August 31, 2010.  He was ordered to report to ICE on October 10, 2017 with a plane ticket to depart to Indonesia on October 11, 2017.  Petitioner/Plaintiff PENTURY is the caretaker of his elderly mother, an Indonesian Christian currently in poor health who was granted withholding of removal by an Immigration Judge on the basis that she was more likely than not to be harmed on account of her religion if returned to Indonesia.

39.     Petitioner/Plaintiff ELVIS SEPANG is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision without incident since September 3, 2010.  He has been ordered to report to ICE on October 13, 2017 with a plane ticket to depart to Indonesia on November 9, 2017.  He is the husband of Petitioner/Plaintiff ESTER ARINA; they have five U.S. citizen children, ages 5, 8, 10, 12, and 15.

4838-6528-5969.1

40.     Petitioner/Plaintiff ESTER ARINA is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  She was living under an Order of Supervision without incident since September 3, 2010.  She has been ordered to report to ICE on October 13, 2017 with a plane ticket to depart to Indonesia on November 9, 2017.  She is the wife of Petitioner/Plaintiff ELVIS SEPANG; they have five U.S. citizen children, ages 5, 8, 10, 12, and 15.

41.     Petitioner/Plaintiff YAHYA BANTURINO is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.   He was living under an Order of Supervision without incident since September 2, 2010.  He has been ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on November 5, 2017.   Petitioner/Plaintiff YAHYA BANTURINO is a cancer survivor who continues to receive medical care: consisting of follow up visits every six months for clinical assessment, labs including checking a tumor marker, and CT scans to monitor for disease recurrence.

42.     Petitioner/Plaintiff JODY SOEBAGYO is a national of Indonesia of Christian faith who is subject to a final order of removal. He was living without incident since April 22, 2016 under an Order of Supervision which he understood to have been issued under the auspices of Operation Indonesian Surrender.  He has been ordered to report to ICE on October 10, 2017. He is the husband of Petitioner/Plaintiff PINTA CHRISMILIAN; they have two U.S. citizen children, ages 7 and 14.

43.     Petitioner/Plaintiff PINTA CHRISMILIAN is a national of Indonesia of Christian faith who is subject to a final order of removal. She was living without incident since April 22, 2016 under an Order of Supervision which she understood to have been issued under the

16

auspices of Operation Indonesian Surrender.  She has been ordered to report to ICE on October 10, 2017.  She is the wife of Petitioner/Plaintiff JODY SOEBAGYO; they have two U.S. citizen children, ages 7 and 14.

44.     Petitioner/Plaintiff NICO FNU is a national of Indonesia of Christian faith who is subject to a final order of removal. He was living without incident since June 15, 2016 under an Order of Supervision which he understood to have been issued under the auspices of Operation Indonesian Surrender. He has been ordered to report to ICE on October 11, 2017 with a plane ticket to depart to Indonesian on November 11, 2017.  He has two U.S. citizen children, ages 11 weeks and 1 year.

45.     Petitioner/Plaintiff WILLY MANDAGI is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He has been ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on November 6, 2017.  He is the husband of Petitioner/Plaintiff ADELE TUMBEL; they have two U.S. citizen children, ages 13 and 17.

46.     Petitioner/Plaintiff ADELE TUMBEL is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  She was living under an Order of Supervision without incident since September 1, 2010.  She has been ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on November 6, 2017.  She is the wife of Petitioner/Plaintiff WILLY MANDAGI; they have two U.S. citizen children, ages 13 and 17.

47.     Petitioner/Plaintiff JAMES TOMBENG is a national of Indonesia of Christian faith is subject to a final order of removal. He was living without incident since October 13,

2010, under an Order of Supervision which he understood to have been issued under the auspices of Operation Indonesian Surrender. He has been ordered to report to ICE on October 13, 2017 with a plane ticket to depart to Indonesia on November 13, 2017.  He is the husband of Petitioner/Plaintiff JANE PAJOW; they have two U.S. citizen children, ages 11 and 17.  Their oldest son has enlisted in the United States Marine Corps and departs for boot camp on August 20, 2018.

48.     Petitioner/Plaintiff JANE PAJOW is a national of Indonesia of Christian faith who is subject to a final order of removal. She was living without incident since October 13, 2010, under an Order of Supervision which she understood to have been issued under the auspices of Operation Indonesian Surrender. She has been ordered to report to ICE on October 13, 2017 with a plane ticket to depart to Indonesia on November 13, 2017.  She is the wife of Petitioner/Plaintiff JAMES TOMBENG; they have two U.S. citizen children, ages 11 and 17. Their oldest son has enlisted in the United States Marine Corps and departs for boot camp on August 20, 2018.

49.     Petitioner/Plaintiff GOLTODO PARAPAT is a national of Indonesia of Christian faith who is subject to a final order of removal.  He was living without incident since October 13, 2010, under an Order of Supervision which he understood to have been issued under the auspices of Operation Indonesian Surrender.  He has been ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on November 5, 2017.  He is the husband of Petitioner/Plaintiff MARGARIET SITOMPUL; they have three U.S. citizen children, ages 5, 5, and 7.

50.     Petitioner/Plaintiff MARGARIET SITOMPUL is a national of Indonesia of Christian faith who is subject to a final order of removal.  He was living without incident since

October 13, 2010, under an Order of Supervision which she understood to have been issued under the auspices of Operation Indonesian Surrender.  She has been ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on November 5, 2017.  She is the wife of Petitioner/Plaintiff GOLTODO PARAPAT; they have three U.S. citizen children, ages 5, 5, and 7.

51.     Petitioner/Plaintiff SERO RARUNG is a national of Indonesia of Christian faith who is subject to a final order of removal.  He was living without incident since April 10, 2014, under an Order of Supervision which she understood to have been issued under the auspices of Operation Indonesian Surrender.  He has been ordered to report to ICE on October 17, 2017 with a plane ticket to depart to Indonesia on November 17, 2017.  Petitioner/Plaintiff SERO RARUNG is widowed, having lost his wife of 32 years after she succumbed to a twelve-year illness due to kidney failure. He is currently under the medical care of a doctor due to difficulty breathing and high blood pressure.

52.     Petitioner/Plaintiff STEPHEN RARUNG is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision without incident since April 10, 2014. He has been ordered to report to ICE on October 17, 2017 with a plane ticket to depart to Indonesia on November 17, 2017.   He is the son of Petitioner/Plaintiff STEPHEN RARUNG and lost his mother to kidney failure in July 2013.

53.     Petitioner/Plaintiff HEFRI SENDUK is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision without incident since August 31, 2010.  He has been ordered to report to ICE on October 13, 2017 with a plane ticket to depart to

Indonesia on November 6, 2017.   He is the husband of Petitioner/Plaintiff LAURA RONDONUWU.  They have two U.S. citizen children, ages 10 and 11.

54.    Petitioner/Plaintiff LAURA RONDONUWU is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  He was living under an Order of Supervision without incident since September 3, 2010.  She has been ordered to report to ICE on October 13, 2017 with a plane ticket to depart to Indonesia on November 6, 2017.  She is the wife of Petitioner/Plaintiff HEFRI SENDUK.  They have two U.S. citizen children, ages 10 and 11.

55.    Petitioner/Plaintiff WENDA CHAPMAN (a/k/a/ WENDA TAN) is a national of Indonesia of Christian faith who is subject to a final order of removal. She was living without incident since October 13, 2010,  under an Order of Supervision which she understood to have been issued under the auspices of Operation Indonesian Surrender. She has been ordered to report to ICE on October 19, 2017 with a plane ticket to depart to Indonesia on November 19, 2017.  Her husband is a U.S. citizen and she has one U.S. citizen so from a previous marriage, age 11.

56.    Petitioner/Plaintiff JACLYN LELE is a national of Indonesia of Christian faith who is subject to a final order of removal.  She was living without incident since May 6, 2014 under an Order of Supervision which she understood to have been issued under the auspices of Operation Indonesian Surrender.  She has been ordered to report to ICE on October 6, 2017 and to depart to Indonesia on November 6, 2017.  Her husband is an applicant for asylum before the Boston Immigration Court.  From a prior relationship, Petitioner/Plaintiff JACLYN LELE has one U.S. citizen child, age 7.

57.     Petitioner/Plaintiff SAMUEL WONDAL is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.   He was living under an Order of Supervision without incident since September 3, 2010.  He reported to ICE on September 11, 2017 and is scheduled to depart to Indonesia on October 17, 2017.  His wife is currently pursuing an application for cancellation of removal at the Boston Immigration Court based upon her seventeen year residence in the United States and the exceptional and extremely unusual hardship the couple's two U.S. citizen children, ages 8 and 10, will endure if their mother is removed from the United States.

58.     Petitioner/Plaintiff MARKUS SUBROTO is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.   He was living under an Order of Supervision without incident since September 2, 2010.  He has been ordered to report to ICE on October 13, 2017 with a plane ticket to depart to Indonesia on November 13, 2017.  He is the husband of Petitioner/Plaintiff TAMARA TASYA; they have two U.S. citizen children, ages 12 and 15.

59.     Petitioner/Plaintiff TAMARA TASYA is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  She was living under an Order of Supervision without incident since September 2, 2010.  She has been ordered to report to ICE on October 13, 2017 with a plane ticket to depart to Indonesia on November 13, 2017.  She is the wife of Petitioner/Plaintiff MARKUS SUBROTO; they have two U.S. citizen children, ages 12 and 15.

60.     Petitioner/Plaintiff FELICIA LUKMAN is a national of Indonesia of Christian faith who is subject to a final order of removal.  She was living without incident since May 31, 2016 under an Order of Supervision which she understood to have been issued under the

auspices of Operation Indonesian Surrender.  She has been ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on November 5, 2017.  Petitioner/Plaintiff FELICIA LUKMAN entered the United States in June 2008 at age 15, but due to her age, did not qualify for DACA.  She graduated from University of New Hampshire in 2015 majoring in Biology Medical and currently works as a Laboratory Technician at Dartmouth-Hitchcock Medical Center in Lebanon, New Hampshire.

61.    Petitioner/Plaintiff KAJONO GUNARDI is a national of Indonesia of Christian faith who is subject to a final order of removal.  He was living without incident since November 13, 2013, under an Order of Supervision which he understood to have been issued under the auspices of Operation Indonesian Surrender. He has been ordered to report to ICE on October 19, 2017 with a plane ticket to depart to Indonesia on November 19, 2017.  He is the husband of Petitioner/Plaintiff LENY SUTANTO; they have three children, ages 20, 24, and 27, all of whom are DACA recipients and are currently attending college and university in the United States.

62.    Petitioner/Plaintiff LENY SUTANTO is a national of Indonesia of Christian faith, faith who is subject to a final order of removal.  He was living without incident since November 13, 2013, under an Order of Supervision which he understood to have been issued under the auspices of Operation Indonesian Surrender. He has been ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on November 6, 2017.  She is the wife of Petitioner/Plaintiff KAJONO GUNARDI; they have three children, ages 20, 24, and 27, all of whom are DACA recipients and are currently attending college and university in the United States.

63.    Petitioner/Plaintiff BOBBY CANDRA is a national of Indonesia of Christian faith who is subject to a final order of removal. He was living without incident since June 6, 2013

under an Order of Supervision which he understood to have been issued under the asuspices of Operation Indonesian Surrender. He has been ordered to report to ICE on October 16, 2017 with a plane ticket to depart to Indonesia on November 16, 2017.  He has three U.S. citizen children, ages 6, 13, and 15.

64.     Petitioner/Plaintiff FRANKY MASSIE is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.   He was living under an Order of Supervision without incident since September 1, 2010.  He has been ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on November 6, 2017.  He is the husband of Petitioner/Plaintiff SANDRA SAHERTIAN.  Petitioner/Plaintiff FRANKY MASSIE suffers from a chronic lung condition and respiratory disease stemming from a lung lobectomy performed in 2002.   These conditions require regular medical care and are sufficiently debilitating so that he cannot work, cannot travel by air, and is dependent upon his wife.

65.     Petitioner/Plaintiff SANDRA SAHERTIAN is a national of Indonesia of Christian faith who is a participant in the Operation Indonesian Surrender Program and subject to a final order of removal.  She was living under an Order of Supervision without incident since September 1, 2010.  She has been ordered to report to ICE on October 6, 2017 with a plane ticket to depart to Indonesia on November 6, 2017.  She is the wife of Petitioner/Plaintiff FRANKY MASSIE; who suffers from a severe medical condition and for whom Petitioner/Plaintiff provides financial, emotional, and spiritual support.

66.     Respondent/Defendant CHRIS M. CRONEN is the Boston Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement and is sued in his official capacity. The Field Office Director has responsibility for and authority over

the detention and removal of noncitizens within the Boston Region, and is their custodian, for purposes of habeas corpus. Respondent/Defendant CRONEN's office is in Burlington, Massachusetts.

67.     Respondent/Defendant TIMOTHY STEVENS is Manchester Sub-Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement and is sued in his official capacity. The Manchester Sub-Office, which reports to Respondent/Defendant CRONEN, has responsibility for the detention and removal of certain noncitizens and is the sub-office of the Boston Region to which many of the Petitioners/Plaintiffs have been ordered to report.

68.     Respondent/Defendant ELAINE C. DUKE is the Acting Secretary of the U.S. Department of Homeland Security ("DHS") and is sued in her official capacity. Respondent/Defendant CRONEN reports to Acting Secretary Duke, who therefore has supervisory responsibility for and authority over the detention and removal of the Petitioners/Plaintiffs.

## LEGAL BACKGROUND

69.     Consistent with U.S. obligations under the CAT, the INA prohibits the U.S. government from removing a noncitizen to a country where he or she is more likely than not to face persecution or torture.

70.     Specifically, 8 U.S.C. § 1231(b)(3), "Restriction on Removal to a country where alien's life or freedom would be threatened," codifies the *nonrefoulement* obligation of the Refugee Act. The provision is a mandatory prohibition on removing noncitizens to a country where their life or freedom would be threatened on the grounds of race, religion, nationality,

24

membership in a particular social group or political opinion. Apart from certain specified exceptions, any individual who can demonstrate that it is more likely than not that he or she will be persecuted on one of the five protected grounds is entitled to this statutorily mandated protection. *See INS v. Stevic*, 467 U.S. 407 (1984) (holding that alien is entitled to relief from deportation if he is more likely than not to face persecution on one of the specified grounds following his deportation).

71.     The other prohibition on removal tracks the CAT's prohibition on removal of noncitizens to countries where they would face torture. *See* 8 C.F.R. §§ 208.16-18 (implementing the CAT's provisions with regard to withholding of removal); FARRA, Pub. L. No. 105-277, Div. G., Title XXII, § 2242, 112 Stat. 2681-822 (Oct. 21, 1998) (codified as Note to 8 U.S.C. § 1231); U.N. Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, art. 1, P 1, opened for signature Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85.

72.     Under the CAT, an individual may not be removed if "it is more likely than not that [the individual] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); torture may be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). The regulations provide for both withholding of removal under CAT and "deferral of removal." Whereas withholding of removal is subject to the same exceptions as apply to 8 U.S.C. § 1231(b)(3), deferral of removal contains no exceptions for people with "particularly serious crimes." *Compare* 8 C.F.R. § 208.16(d)(3) *with* 8 C.F.R. § 208.17.

73.     Petitioners/Plaintiffs are also potentially eligible for asylum.  *See* 8 U.S.C. § 1158. Asylum is a discretionary form of relief from persecution that is available to noncitizens who can

demonstrate that they have a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). "[A]ny alien who is physically present in the United States or who arrives in the United States… irrespective of such alien's status, may apply for asylum in accordance with this section." 8 U.S.C. § 1158(a)(1). To prevail on an asylum claim, the applicant must establish that there is at least a 10% chance that he or she will be persecuted on account of one of these enumerated grounds. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 439-40 (1987).

74. Noncitizens who have been ordered removed have the statutory right to file motions to reopen their cases, which are governed by certain time and numerical requirements. *See* 8 U.S.C. § 1229a (c)(7). The statute grants special solicitude for noncitizens who are seeking relief from persecution. If the noncitizen is seeking asylum, withholding, or protection under CAT based "on changed country conditions arising in the . . . country to which removal has been ordered," the statute permits the noncitizen to file a motion to reopen at any time. *Id.* § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. §§ 1003.2(c)(3)(ii) & 1003.23(b)(4)(i).

75. The exception to the numerical and time limits provides a safety valve for bona fide refugees who would otherwise be deported from the United States in violation of U.S. international treaty obligations of *nonrefoulement*. See *Salim v. Lynch*, 831 F.3d 1133, 1137 (9th Cir. 2016) ("Judicial review of a motion to reopen serves as a 'safety valve' in the asylum process. . . . Such oversight 'ensure[s] that the BIA lives by its rules and at least considers new information' bearing on applicants' need for and right to relief.") (citing *Pilica v. Ashcroft*, 388 F.3d 941, 948 (6th Cir. 2004)).

76. In addition, the Due Process Clause and the INA grant Petitioners/Plaintiffs the right to counsel to challenge their removal, and to a fair proceeding before they are removed

26

from the country. 8 U.S.C. § 1362; *Leslie v. Attorney General*, 611 F.3d 171, 181 (3d Cir. 2010) (holding that the Fifth Amendment and immigration statute affords a noncitizen right to counsel of her own choice); *Amadou v. INS*, 226 F.3d 724, 726-27 (6th Cir. 2000) (noting that noncitizens have "due process right to a full and fair hearing").

## FACTS

### ICE Induced Indonesian Christians with Final Removal Orders to Come Forward, But Then Abruptly Moved to Deport Them Without Sufficient Notice.

77.    In 2009 and 2010, ICE in Boston began a program called "Operation Indonesian Surrender" to induce Christian Indonesian nationals who were residing under a final order of removal to identify themselves to ICE in exchange for the ability to remain in the United States under an Order of Supervision.   *See* "Jeanne Shaheen: Trump should let NH's Indonesian Community Stay," *Manchester Union Leader* (Sept. 10, 2017) ("In 2009, working with these families and members of their church community, my office helped negotiate an agreement with ICE to allow them to remain in New Hampshire and obtain work permits in exchange for a pledge to regularly touch base with ICE."), *available at*  http://www.unionleader.com/Another-View-Jeanne-Shaheen-Trump-should-let-NHs-Indonesian-community-stay-09112017.

78.    As described by an ICE public affairs official, this was an "humanitarian effort" involving Indonesian churches.  *See* "ICE Seeks Surrender of Illegal Immigrants," *Foster's Daily Democrat* (Sept. 10, 2010) ("'The whole purpose is bringing folks out of the shadows and saying listen, we'll work with you. They're hiding in fear and we don't want that - no one wants that.'"), *available at*  http://www.fosters.com/article/20100901/GJNEWS_01/709019921.  ICE worked with pastors in the Indonesian Christian churches to help identify "upstanding" members of the

community to participate in this program.  *Id.* Individuals with criminal records were not eligible for the program. *Id.*

79.     Upon information and belief, approximately 100 Christian Indonesian individuals in New England participated in the program, and received Orders of Supervision.

80.     Upon information and belief, individuals within this program relied on these Orders of Supervision, generally abided by the conditions imposed by the Orders, and continued to be productive members of their respective communities.  In 2012, the program was further limited to individuals with U.S. citizen children and/or spouses.  Approximately 70 individuals remain in the Boston region pursuant to that Program.

81.     Upon information and belief, in or about June 2017, ICE advised the community that it would likely be issuing Denials of Stays of Removal and/or Notices of Revocation of Release to Indonesian Christians who were participants in the program. The change in policy came as a shock to the community. Until then, Indonesians with final orders had been living at large, for years, with few restrictions apart from regular reporting requirements. Law abiding individuals, who have been living in the United States for years—in most cases, for nearly two decades—and who have been fully compliant with their conditions of supervision, and all of whom, upon information and belief, have U.S. citizen children or spouses, suddenly found themselves facing orders to obtain tickets back to Indonesia, a country where they will surely face severe persecution.  Further, upon information and belief, on August 1, 2017 at a common check-in date for many participants in Operation Indonesian Surrender, at the ICE Sub-Office in Manchester, roughly two dozen participants were ordered by ICE Officers to return roughly 30-45 days later with plane tickets to Indonesia.  There was no warning about this change, and no

reasonable  opportunity for Petitioner/Plaintiffs to research and understand their rights and seek

appropriate relief in an appropriate forum.

82.     Persecution of Christian minorities in Indonesia has been well documented, as the

U.S. Court of Appeals for the First Circuit has recognized even since the beginning of Operation

Indonesian Surrender when it has engaged in reviewing the type of fact-specific inquiry that

Petitioners/Plaintiffs seek to present:

> Panoto is a Christian from Indonesia, a predominantly Muslim country. According to the
> IJ's decision, Panoto testified that she experienced persecution as an Indonesian Christian
> and attributed the following incidents to her religious identity.
>
> On Christmas Eve in 2000, a member of Panoto's congregation found a black box outside
> their church. Police officers determined that the item was a bomb and removed it before it
> could detonate. Panoto testified that local authorities did not investigate the event further.
>
> Approximately six months later, in June 2001, Panoto was riding on a ferry boat when it
> was hijacked by Muslim extremists. Once aboard, the hijackers shouted for the Christian
> passengers to come forward. Panoto witnessed the militants slit an elderly Christian
> woman's throat, killing her. One extremist then yanked Panoto by the hair and slapped
> her, commanding that she state her faith. Panoto did not reply, and just as he was about to
> attack her, another hijacker called him away.

*Panoto v. Holder*, 770 F.3d 43, 45 (1st Cir. 2014) (granting petition for review and vacating

order of removal).


***Individuals With Old Removal Orders May Have Multiple Bases for Reopening their Cases,
Including Changed Country Conditions in Indonesia That Put Them at Risk of Persecution or
Torture if Removed.***

83.     Each of the Petitioners/Plaintiffs and members of the putative class  may have

multiple bases for reopening their removal cases, including recent attainment of eligibility for

immediate relative status (such as marriage to a U.S. citizen or a U.S. citizen child's attainment

of the age of the twenty-one), discretionary ineffective assistance of counsel, extraordinary

4838-6528-5969.1

circumstances, or changed country conditions in Indonesia, each of which must be carefully adjudicated by an Immigration Judge or the Board of Immigration Appeals.

84.     For example, with respect to country conditions, many of the Petitioners'/Plaintiffs' removal orders predate the significant deterioration in Indonesia and the increasing danger for Christian that has come in part from the rise of the so-called "Islamic State" in Indonesia, as illustrated by an attack in 2016 in Jakarta, the area of Indonesia from which many of the Petitioners/Plaintiffs escaped to come to the U.S..  As reported by the U.S. Department of State: "on January 14, 2016, terrorists using guns and explosives attacked near the Sarinah Plaza in Central Jakarta, killing four civilians, including a foreigner, and injuring 17 others." Bureau of Consular Affairs, U.S. Dep't of State, *Country Information: Indonesia* (Apr. 17, 2017), *available at* https://travel.state.gov/content/passports/en/country/ indonesia.html; *see also* Jonathan Egmonth, "Islamist Intolerance Poses a Growing Threat to Indonesia's Minorities, *TIME* (Apr. 20, 2016), *available at* http://time.com/4298767/indonesia-intolerance-muslim-islamist-minorities-lgbt-christians-hardliners/.

85.     At least one other federal district court, facing analogous challenge by a discrete group of noncitizens who were from a country whose level of persecution of Christians had recently increased, in part due to the rise of the Islamic State, permitted a stay of removal to accommodate the filing of motions to reopen.  *Hamama v. Adducci*, No. 17-cv-11901, 2017 WL 2806144 (E.D. Mich. June 26, 2017) (issuing preliminary injunction to stay the removal of Christians to Iraq).

***Severe Obstacles to Due Process Are Created by ICE's Immediate Removal Timeline.***

86.     ICE's issuances of Notice of Revocation of Release and/or Denials of Stays has severely impeded Petitioners'/Plaintiffs' ability to exercise their due process rights, due to the extraordinarily short time for removal that would preclude the preparation of motions to reopen.

87.     Filing motions to reopen requires substantial time and resources. Most take several months and cost several thousand dollars.  This process will be even more difficult for those who lack assistance of counsel and/or the means to retain counsel. Those who have retained counsel still face additional hurdles in filing motions to reopen.  Attorneys will need time to visit and interview clients, review administrative records and applications for relief from removal previously adjudicated, marshal evidence, and draft pleadings and related papers, all of which is impossible within the compressed timeframe permitted for removal that ICE has set – with deportations set to begin as early as this Wednesday.

88.     With respect to motions to be filed for Petitioners/Plaintiffs seeking to reopen their previously-denied applications for asylum, withholding of removal, and/or CAT, the immediate removal timeline infringes upon due process.  The First Circuit has stated that, for the purposes of such motions "evidence of changed circumstances must demonstrate an intensification or deterioration of [his] country['s] conditions, not their mere continuation." *Marsadu v. Holder*, 748 F.3d 55, 58 (1st Cir. 2014).  To assess the deterioration of country conditions and, correspondingly, whether the Petitioners/Plaintiffs now has a well-founded fear of religious persecution, the Immigration Judge or the Board of Immigration Appeals will compare evidence presented at the initial adjudication with newly proffered evidence. *Id.* at 58-59.[1]  On the one hand, without an opportunity to review the administrative record with their

---

[1]  A "well-founded fear of persecution" is demonstrated by evidence establishing a "reasonable likelihood" that the Petitioner/Plaintiff  will face persecution, "provided that his fears are
*(Footnote continued on next page)*

attorneys and adequately prepare pleadings in consideration of this exacting legal standard, the motions to reopen will invariably be denied.  On the other hand, failure to file for relief within the immediate removal timeline could result in *refoulement*.  Such a choice clearly does not satisfy the minimum procedural safeguards guaranteed by due process.

89.     In considering a similar group of noncitizens subjected to removal on a compressed timetable impinging on their due process rights, another federal court permitted a stay of removal.  *Hamama v. Adducci*, No. 17-cv-11901, 2017 WL 2806144 (E.D. Mich. June 26, 2017).

## CLASS ALLEGATIONS

90.     Petitioners/Plaintiffs incorporate by reference the foregoing paragraphs as if fully alleged herein.

91.     Plaintiffs/Petitioners bring this action on behalf of themselves and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and as a representative habeas class action for similarly situated persons pursuant to a procedure analogous to Rules 23(a) and 23(b)(2). *See Ali v. Ashcroft*, 346 F.3d 873, 889-91 (9th Cir 2003) (holding that the district court did not exceed its habeas jurisdiction in certifying a nationwide

---

*(Footnote continued from previous page)*
subjectively genuine and objectively reasonable. *Marsadu*, 748 F.3d at 58 (quoting 8 C.F.R. § 208.13(b) ).

> To prove that his fears are objectively reasonable, a petitioner typically must either: (a) produce credible, direct, and specific evidence supporting a fear of *individualized* persecution in the future, or (b) he must establish  that there is a pattern or practice in his country of nationality of persecution of a group of persons similarly situated to the petitioner on account of race, religion, nationality, membership in a particular social group, or political opinion,

*Id.* (internal citations and quotations omitted).

32

habeas class), *withdrawn and amended on other grounds on reh'g, Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005); *see also Geraghty v. U.S. Parole Commission*, 429 F. Supp. 737, 740 (M.D. Pa. 1977).

92.     In addition to the named Petitioners/Plaintiffs, there are numerous other individuals living within the jurisdiction of the Boston ICE Field Office who were lured into "Operation Indonesian Surrender" under humanitarian pretenses, who are now subject to Orders of Supervision, and whose rights under the United States Constitution and applicable international treaties are infringed by ICE's immediate removal timeline.  Each of these similarly situated individuals is in "custody," faces imminent removal from the United States, and, as a result, is effectively being deprived of the opportunity to prepare motions to reopen and underlying applications prior to removal. Due process and statutory and treaty protections afforded to persons fearing religious persecution or torture in their home countries compels sufficient time to file.  Petitioners/Plaintiffs and the putative class they seek to represent be afforded the opportunity to take such steps and have their arguments heard by an Immigration Court before the government can send them to a country that is now foreign and hostile to them.

93.     Each of these similarly situated individuals is entitled to bring a petition for a writ of habeas corpus, and writ of mandamus or, in the alternative, a complaint for declaratory and injunctive relief, to prohibit the Respondents'/Defendants' attempts to foreclose their access to counsel and ability to prepare filings necessary to seek relief from removal due to changed country conditions in Indonesia, changed familiar status, or any other valid basis for relief.

94.     These similarly situated individuals satisfy the numerosity, typicality, commonality, and adequacy of representation requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Reid v. Donelan*, 297 F.R.D. 185, 188 (D. Mass.), *enforcement granted*, 64

33

F. Supp. 3d 271 (D. Mass. 2014); *Gordon v. Johnson*, 300 F.R.D. 28, 30 (D. Mass. 2014); *see generally U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974) (applying class certification concepts to a motion for class certification filed by a petitioner seeking habeas relief on behalf of himself and all others similarly situated).  The proposed class is defined under Rule 23(b)(2) as:

> All Indonesian nationals within the jurisdiction of the Boston ICE
> Field Office, with final orders of removal, who have been, or will
> be, arrested, detained, or removed by ICE after having participated
> at any time in "Operation Indonesian Surrender."

The proposed class falls within the defined categories of Rule 23(b)(2) in that the United States "has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole." *Reid*, 297 F.R.D. at 192-93 (*quoting* Fed. R. Civ. Proc. 23(b)(2)) ("[C]ivil rights actions like this one, where a party charges that another has engaged in unlawful behavior towards a defined group, are 'prime examples' of Rule 23(b)(2) classes").

95.     Upon information and belief, there are approximately 70 Indonesian Christian individuals remaining in the Operation Indonesian Surrender program under Orders of Supervisions who are could be part of the proposed class. *See George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 173 (D. Mass. 2012) (recognizing that forty or more persons in a class ordinarily satisfies the numerosity requirement).  The total number of class members and the varied terms of their Orders of Supervision and the manner and in which the United States will effect their removal from the United States is such that joinder of the claims of all class members would be impracticable.

96.     Joinder is also impracticable because some members of the class have limited financial means to bring an individual action for the relief requested herein and some class members may be dissuaded from bringing suit individually for fear of retaliation by the

government for exercising their rights. This class action is only the first legal step for the putative class members, designed merely to afford them the opportunity to take further legal steps, individually, to protect their individual rights.   Judicial economy and the need to expeditiously resolve the claims raised herein also counsel in favor of class treatment.

97.     Petitioners/Plaintiffs' claims are typical of the claims of the proposed class. Petitioners/Plaintiffs' claims arise from the same course of events—Boston ICE's "Operation Indonesian Surrender" and its sudden decision to deport the participants of that program—and are based on the same legal arguments.

98.     Petitioners/Plaintiffs will fairly and adequately protect the interests of the proposed class. Petitioners/Plaintiffs have no relevant conflicts of interest with other members of the proposed class, nor are any conflicts likely to arise, and Petitioners/Plaintiffs have the ability and incentive to prosecute the action vigorously on behalf of the class. Petitioners/Plaintiffs have retained competent counsel experienced in class action and immigration law.

99.     There are multiple questions of law and fact common to the members of the proposed class. These common questions include, but are not limited to, the following:

> a.   Whether Petitioners/Plaintiffs and the proposed class can be removed without being provided an opportunity to demonstrate that they qualify for relief from persecution or torture based on, *inter alia,* changed country conditions in Indonesia;
>
> b.   Whether 8 U.S.C. § 1158, 8 U.S.C. § 1231(b)(3), and the Convention Against Torture impose a mandatory obligation to consider

Petitioners/Plaintiffs' and class members' individualized requests for relief from persecution or torture; and

c.   Whether Respondent violated Petitioners'/Plaintiffs' and class members' constitutional, statutory, and regulatory right to due process and a fair removal hearing by arbitrarily orchestrating a compressed process for removal that deprives them of their rights to reopen their individual immigration cases by giving them no time to make appropriate filings in Immigration Court.

100.    Finally, the proposed class is ascertainable because the class is sufficiently definite and provable. The class consists of Christian Indonesian nationals living in New England that participated in "Operation Indonesian Surrender" who are now subject to a final order of removal.  Respondent should have records sufficient to identify all persons in the class.

## CAUSES OF ACTION

### COUNT ONE
### IMMIGRATION AND NATIONALITY ACT - PROHIBITION ON REMOVAL TO COUNTRY WHERE INDIVIDUAL WOULD FACE PERSECUTION OR TORTURE

101.    Petitioners/Plaintiffs reallege the foregoing paragraphs as if set forth fully herein.

102.    Pursuant to the INA, and to ensure compliance with international treaties for which it is a signatory, the U.S. government is prohibited from removing noncitizens to countries where they are more likely than not to face persecution or torture.

103.    The prohibition on removal is mandatory for anyone who satisfies the eligibility criteria set forth in the applicable statutes and regulations. In addition, where country conditions

change after an individual has been ordered removed, the INA specifically provides for motions to reopen a removal order in order to renew one's claims for protection in light of new facts.

104.    Petitioners/Plaintiffs, who are facing removal to Indonesia based on stale removal orders, face persecution and/or torture if removed to that country in light of changed circumstances since their cases were first considered. Removing the Petitioners/Plaintiffs without giving them a fair opportunity to raise these issues in Immigration Court violates the INA and international treaties to which the United States is a signatory.

## COUNT TWO
## FIFTH AMENDMENT – PROCEDURAL DUE PROCESS
## DENIAL OF RIGHT TO REOPEN REMOVAL ORDERS ON ACCOUNT OF
## ELIGIBILITY FOR ASYLUM/WITHHOLDING OF REMOVAL/CAT PROTECTION

105.    Petitioners/Plaintiffs reallege the foregoing paragraphs as if set forth fully herein.

106.    Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of life or liberty interests protected under the Due Process Clause of the Fifth Amendment.

107.    The United States government is obligated by federal and international law, to hear the claims of noncitizens, regardless of their status, who have a credible fear of persecution or torture emanating from their home country before they are removed from the United States to that country.

108.    Because the danger to the named Petitioners/Plaintiffs and others similarly situated  is based on changed country circumstances in Indonesia, they have not received their core procedural entitlement-they have not had an opportunity to have their claims heard at a meaningful time and in a meaningful manner, that is, with respect to current conditions, not the conditions that existed at the time their removal order was first issued. Removing the

Petitioners/Plaintiffs without giving them this opportunity violates due process guarantee of the Fifth Amendment.

## COUNT THREE - UNLAWFUL DETENTION

109.    Petitioners/Plaintiffs reallege the foregoing paragraphs as if set forth fully herein.

110.    Petitioners/Plaintiffs' detention violates due process unless it bears a reasonable relationship to the government's purposes - effectuating removal and protecting against danger.

111.    The government's detention of Petitioners/Plaintiffs bears no reasonable relationship to either purpose. At a minimum, Petitioners/Plaintiffs must be afforded individualized determinations to assess whether their continued detention is justified.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Petitioners/Plaintiffs respectfully request that this Honorable Court:

A.  Assume jurisdiction over this matter;

B. Issue a temporary restraining order and preliminary injunction temporarily staying Petitioners'/Plaintiffs' removal, and that of all putative class members, until this action is decided;

C. Certify a class defined as "all Indonesian nationals within the jurisdiction of the Boston ICE Field Office, with final orders of removal, who have been, or will be, arrested, detained, or removed by ICE after having participated at any time in "Operation Indonesian Surrender";

D. Name Petitioners/Plaintiffs as representatives of the proposed class; and appoint Petitioners'/Plaintiffs' counsel as class counsel;

E. Declare that Respondents/Defendants have violated the rights of the class;

F. Order Respondents/Defendants to provide Petitioners'/Plaintiffs' counsel with a list of all class members and copies of their A files (immigration files) and program descriptions, criteria, or policy memoranda relating to "Operation Indonesian Surrender";

G. Enjoin Respondents/Defendants from removing Petitioners/Plaintiffs and all putative class members to Indonesia without first providing them with sufficient opportunity to establish that, in light of current conditions and the likelihood that they would suffer persecution or torture if removed to Indonesia, they are entitled to protection against such removal, and enter a writ of mandamus for that same purpose;

H. Enjoin Respondents/Defendants from removing Petitioners/Plaintiffs and all putative class members to Indonesia until they have been given sufficient time to enable them to file motions to reopen their removal orders and seek stays of removal from the immigration court; specifically, each member of the petitioner class should be given four months to file their motions to reopen, starting when the government provides a copy of the individual's A-file and the Record of Proceedings to the Petitioner's immigration counsel (i.e., counsel who has filed a G-28 form or equivalent) or, if the Petitioner does not have counsel, to the Petitioner; a petitioner who does file a motion to reopen will be protected by the stay until such time as the immigration court and the Board of Immigration Appeals ("BIA") adjudicate the motion, and the Petitioner has had the opportunity to file a petition for review and seek a stay with the Court of Appeals.

I. Enjoin Respondents/Defendants from transferring Petitioners/Plaintiffs and all putative class members outside of the jurisdiction of the New England Region and/or the Boston Field Office;

J. Order Respondents/Defendants to release all Petitioners/Plaintiffs and all putative class members from detention absent an individualized determination by an impartial adjudicator that their detention is justified based on danger or flight risk, which cannot be sufficiently addressed by alternative conditions of release and/or supervision;

K. Award reasonable attorneys' fees and costs to Petitioners/Plaintiffs; and

L. Grant such other further relief as is just and equitable.

4838-6528-5969.1

Respectfully Submitted,

PETITIONERS/PLAINTIFFS

By Their Attorneys,

*/s/ W. Daniel Deane*
W. Daniel Deane (BBO# 568694)
Nathan P. Warecki (BBO# 687547)
NIXON PEABODY LLP
900 Elm Street
Manchester, NH 03101

Ronaldo Rauseo-Ricupero (BBO# 670014)
Sydney Pritchett (BBO# 694195)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000
rrauseoricupero@nixonpeabody.com

Date: October 6, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 6, 2017.

*/s/ Ronaldo Rauseo-Ricupero*

4838-6528-5969.1