# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LIA DEVITRI, et al.

Petitioners/Plaintiffs,

v.

CHRIS M. CRONEN, et al.

Respondents/Defendants.

Civil Action No. 17-cv-11842-PBS

Leave to File Granted on
December 22, 2017 [Dkt. No. 70]

## PETITIONERS/PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND TO EXTEND STAY OF REMOVAL

Absent the stay issued by this Court, dozens of Christian Indonesian nationals – many of whom have lived in the United States for decades and have U.S. citizen children and were encouraged by ICE to "come out of the shadows" for "humanitarian" reasons through an outreach program ICE itself designed for this particular population – face removal to Indonesia, where there is a great likelihood that they will face persecution or violence due to their faith. The only preliminary injunctive relief Petitioners/Plaintiffs ("Petitioners") seek is the unremarkable remedy of being allowed a reasonable opportunity to submit their colorable Motions to Reopen in a manner that does not extinguish their rights. Respondents/Defendants' ("Respondents") Opposition ("Opp.") largely ignores this Court's earlier ruling on its own jurisdiction, and, rather than trying to address the nature of the preliminary relief sought, instead tries to revisit the Court's jurisdictional ruling.[1]

---

[1] Respondents claim the Petitioners seek a mandatory preliminary injunction, and therefore a "heightened" standard for relief applies. Opp. at 6. Petitioners can meet that standard. But Respondents are wrong. The remedy sought is a traditional prohibitory injunction as the relief sought is a return to the "last uncontested status which preceded the pending controversy" – i.e., the time when removal was not imminent. *United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 10 (1st Cir. 1987).

I.     **The Court Has Already Correctly Ruled That It Has Jurisdiction.**

Respondents' extensive argument concerning jurisdiction is misplaced, as those issues have already been decided by this Court's Order of November 27, 2017 [Dkt. No. 65] ("Order"), which held jurisdiction was proper "under both 28 U.S.C. § 2241 (habeas) and 28 U.S.C. § 1331 (federal question jurisdiction) to ensure that there are adequate and effective alternatives to habeas corpus relief in the circumstances of this case." Order at 11. Those issues, which were determined after full briefing and evidentiary hearing, should not be reargued in this motion.[2]

Moreover, Respondents offer no new arguments regarding jurisdiction in their brief. Respondents first repeat their arguments that 8 U.S.C. § 1252(g) bars judicial review over Petitioners' claims. But Respondents already raised this claim. Respondents' Brief on Jurisdiction [Dkt. No. 36] at 5-6, 8-9. Petitioners responded, arguing why it is best interpreted to not apply and why, if it applied, it is unconstitutional. Petitioners' Brief on Jurisdiction [Dkt. No. 49] at 12-13. The Court agreed with Petitioners' constitutional argument and held that if Section 1252(g) "prevented the Court from giving Petitioners an opportunity to raise their claims through fair and administrative procedures, the statute would violate the Suspension Clause." Order at 15.

Respondents additionally argue that Petitioners do not present a cognizable habeas claim because they do not "pursue release, but rather [seek] to halt their upcoming removal." Opp. at 15. This remarkable contention is demonstrably incorrect. As demonstrated by cases like *INS*

---

[2]     Respondents also seek to again revisit already-decided issues through their Opposition by asserting their position that they should be allowed leave to file a motion to dismiss. Opp. at 16, n.9. Petitioners oppose such an effort as both untimely and as mooted by this Court's Order.

*v. St. Cyr*, 533 U.S. 289 (2001), habeas review has always included challenges to removal as well as physical detention.

Respondents, again, seek to distinguish this case from the Eastern District of Michigan's decision in *Hamama*, on the grounds that Petitioners are not detained and because their return to Indonesia was prevented not by the government of Indonesia but by the actions of the United States government.  Opp. at 17-18.  The detention of the petitioner class was only one of several factors considered by the district court in finding jurisdiction in *Hamama*, which included the time and difficulty in preparing and filing motions to reopen, the fact that removal was a sudden reversal of longstanding policy, the risk of harm after deportation, and the inadequacy of the administrative process in light of these factors together.  *Hamama v Adducci,* 2:17-cv-11910, Opinion & Order Regarding Jurisdiction at 19-24 [Dkt. 64] (E.D. Mich. July 11, 2017) (hereinafter, "*Hamama I*"); *Hamama v Adducci,* 2:17-cv-11910, Opinion & Order Granting Petitioners' Motion for Preliminary Injunction at 8-11, 15-6 [Dkt. 77] (E.D. Mich. July 24, 2017) ("*Hamama II*").  Moreover, that the change in policy is the result of an abrupt and unexplained shift in domestic, and not international, policy is simply of no consequence.

Respondents also repeat their contention that the Suspension Clause is not violated here because the administrative motion to reopen and stay process is an adequate alternative to constitutionally guaranteed habeas review.  Opp. at 10-17.  But the Court has already addressed this contention as well, and concluded that although the Immigration Court's procedures "typically are an adequate and effective administrative alternative to habeas corpus relief," the "BIA's procedures for considering emergency stay requests will not apply to Petitioners." Order at 19.  As discussed below, Petitioners have provided additional evidence to support that point.

In short, this Court has already properly concluded that it has jurisdiction to hear this matter and to order a stay. *Cf. Hamama I* (finding jurisdiction and entering stay before deciding how long stay should be in place). The remaining merits issue, only tangentially addressed by Respondents, is the amount of time the stay of removal should remain in place so Petitioners can meaningfully pursue their CAT and asylum claims through the motion to reopen process.

## II.   Plaintiffs Are Likely To Succeed On The Merits Question That A Continued Stay Is Necessary.

The stay should continue for the following periods:

a)   The stay should remain in place until Petitioners have had an opportunity to seek a stay from the circuit in their individual cases, should their motions to reopen be administratively denied by the Board.[3]

b)   Petitioners should have 90 days to file motions to reopen from the time they receive their A Files and record of proceedings; if they fail to do so, they lose the benefit of the stay.[4]

As an initial matter, the Suspension Clause dictates that Petitioners must be able to remain in the country to seek a stay from the court of appeals. Otherwise, an administrative agency could thwart the judicial review required by the Suspension Clause of Petitioners' individual CAT and asylum claims.[5]

---

[3]   This is the relief ordered in *Hamama*. *See Hamama II* at 33-34.

[4]   The length of time for Petitioners to proceed through the administrative reopening process will be significantly shorter in this case than it might otherwise be were Petitioners beginning the process in the immigration court. Almost all of the Petitioners appealed their original removal orders to the Board of Immigration Appeals, vesting jurisdiction for their forthcoming Motions to Reopen with the Board. Only Petitioners Dantje Lumingkewas and Djeine Lumintang will be filing motions before the Boston Immigration Court.

[5]   Respondents cite *Khan v. Att'y Gen.*, 691 F.3d 488, 491 (3d Cir. 2012), for the proposition that the court of appeals could issue a stay in an individual case even before the Board denies a motion to reopen. But in *Khan* the court of appeals issued the stay only after the

In addition to the Suspension Clause, the relief requested is required by due process, CAT[6], and the withholding and asylum statutes.  ICE may not remove an alien to a country if the government determines that "the alien's life or freedom would be threatened in that country because of the alien's . . . religion."  8 U.S.C. § 1231(b)(3)(A).  Order at 10.  And "Congress codified the right to file a motion to reopen, 'transform[ing] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien.'"  *Id.*  (quoting *Dada v. Mukasey*, 554 U.S. 1, 14 (2008)).

A meaningful opportunity to pursue a motion to reopen for Petitioners in this case means doing so from inside the country given the grave dangers they face if removed, even if in other circumstances a motion to reopen from abroad might be sufficient.  *See Perez-Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013).  As this Court previously noted, the adjudication of a motion to reopen based on changed country conditions could likely prove a pyrrhic exercise if an individual is already removed to a country where they would face persecution.  Order at 12. *Cf. Hamama I* and *II* (holding that Suspension Clause and due process require Iraqis to have meaningful opportunity to pursue motions to reopen from inside the country, where petitioners face torture if removed and cannot realistically pursue motions from abroad).

Respondents do not seriously contest that Petitioners are entitled to a meaningful opportunity to pursue motions to reopen to raise their CAT and persecution claims.  Instead,

---

Board denied the motion to reopen.  And notably, the government argued in that case that the court of appeals lacked jurisdiction to issue a stay prior to a ruling from the Board on the motion to reopen.

[6]   Respondents argue that CAT offers petitioners no rights here because it is not self-executing.  But as the courts have recognized, CAT was executed by Congress with passage of the FARRA.  The First Circuit has thus held that the CAT has been implemented in the United States through regulations and, by way of those regulations, "are now the positive law of the United States." *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003). Respondents' argument is accordingly meritless.

Respondents assert that Petitioners have had a sufficient opportunity to pursue motions to reopen.  But Respondents have not produced any new or additional evidence that, in the absence of a stay, the administrative system is adequate under the unique circumstances of this case. And Respondents' assertions are contradicted by the record here.

First, Respondents suggest that Petitioners should have pursued motions to reopen while they were under orders of supervision in the program.  But this Court has already concluded that Petitioners did not act unreasonably in failing to anticipate Respondents' abrupt change in deciding to hurriedly remove them.

Second, Respondents note that only 5 Petitioners have thus far filed motions to reopen. Counsel for Petitioners have been working diligently to find individual attorneys to take on these cases, but Respondents have disobeyed this Court's October 27, 2017 Order to produce the A-Files [Dkt. No. 58], that would permit the pursuit of the available administrative remedies by individual attorneys.

A motion to reopen is a 'one-shot' motion that is decided on the papers, without oral argument, which is why the strength of the submission in the first instance will largely determine whether the motion will be granted.  *See* Affidavit of Ilana Etkin Greenstein ¶¶ 11-12 (Exhibit C).  *See also* Declaration of Ira J. Kurzban (author of leading immigration law treatise) at ¶¶ 11-15 (Exhibit D) (explaining steps and time needed to prepare an adequate motion to reopen).  Extraordinary efforts have been made to provide *pro bono* representation to Petitioners, but without sufficient time to prepare the submissions credibly, the 'right' to file will be hollow.  Greenstein Aff. ¶¶ 6-11 (Ex. C).  This is because the Petitioners still lack the administrative records that they would need to review and properly prepare their cases.  *Id.*, ¶¶ 13-14.

Reviewing the administrative record below is particularly important in changed country conditions cases: in order to understand what has 'changed' from the original decision, it is important to know what evidence was presented to the Immigration Court in the first instance. *See Marsadu v. Holder*, 748 F.3d 55, 58 (1st Cir. 2014) (observing that, for the purpose of a motion to reopen, changed country conditions are measured by the "evidence presented in the initial adjudication with newly proffered evidence").  And, in the absence of an administrative record, an attorney cannot understand the full range of relief that might be available to a Petitioner, and potential waiver is a real concern.  *See id.,* ¶ 11 (Ex. C).

Nor can Petitioners simply submit boilerplate or "me too" motions simply because they are all Indonesians.  The motions must be tailored to the individual circumstances of each Petitioner.  *See* Declaration of Deborah Anker (Director of Harvard Law School Immigration and Refugee Clinical Program and author of leading asylum treatise)  at ¶¶ 5-8, Exhibit A (noting that the Board requires that asylum and CAT motions be individualized and not based on generalized evidence); *Salim v. Lynch*, 831 F.3d 1133, 1138-1139 (9th Cir. 2016) (granting motion to reopen by Indonesian Christian based on changed circumstances because of voluminous evidence that petitioner faced danger, distinguishing the case from one where the motion to reopen was denied because the Indonesian Christian petitioner "submitted only a single third-party report and his own sworn declaration attesting to increased violence against Christians").

Seeking review of the administrative record is not an unreasonable request at this posture, especially because the Court ordered Respondents to produce files weeks ago. Respondents' refusal to comply with this Court's Order to produce the A-Files has resulted in a waste of time and resources by forcing each Petitioner to file individual FOIA requests. Nevertheless, Petitioners have now secured numerous attorneys who have begun those aspects

of case preparation that do not require the administrative record.  Accordingly, Petitioners

believe that the timeline set forth in *Hamama* for filing the motions to reopen – 90 days

following the receipt of the administrative record – is a reasonable standard for adoption in this

case.[7]

      Third, Respondents argue that the stay practice before the Board is sufficient.  The

Board of Immigration Appeals Practice Manual states at § 6(d)(i) that "an emergency stay

request may be submitted only when an alien is in physical custody and is facing imminent

removal."  Because Petitioners are not in physical custody, that mechanism is not available to

them.[8]  Petitioners are likely to succeed on their claims precisely because of the concern that

this Court has already identified in its Order "that the BIA's procedures for considering

emergency stay requests will not apply to Petitioners because they are not in physical custody."

Order at 19.  This concern has already been borne out in practical terms for some of these

Petitioners.  When Petitioners Heru Kurniawan and Deetje Patty filed Motions to Reopen before

---

[7]    This Court ordered access to the ROPs at the Boston Immigration Court on October 27, 2017 [Dkt. No. 58].  Notification of their partial assembly was confirmed to Petitioners on December 20, 2017, but access remains restricted to on-site review – no duplication or electronic transmittal is permitted, which results in this access being of very limited utility prior to receipt of the FOIA responses with the full A-Files.  *See* Affidavit of J. William Piereson ¶¶ 4-5 (Exhibit G).  Notably, it appears that Respondents had access to these A-File records before at least October 17, 2017, when they offered to this Court "Pertinent A-File Records" in response to this Court's September 27, 2017 Order.  *See* Index of Exhibits in Support of Respondents' Notice of Production ¶¶ AA-XX [Dkt. No. 37-1].

[8]    Respondents assert, without citing any authority or evidence, that "[e]mergency stay motions filed by non-detained individuals are evaluated on a case by case basis."  Opp. at 15, n. 8.  That assertion is belied by the Respondents' own evidence.  Declaration of Christopher Gearin ¶ 9 [Dkt. No. 36-2] (confirming that the Board deems a stay request an emergency if, *inter alia*, "the alien is in the physical custody of the DHS.").  The unavailability of this relief is further described in affidavits from experienced immigration counsel submitted on behalf of Petitioners, which show that emergency stays are unavailable where the applicant is not in physical custody.  *See* Greenstein Aff. ¶¶ 17-18 (Ex. C); Affidavit of Enrique F. Mesa, Jr. ¶¶ 7-8 (Exhibit F); Affidavit of Saher Macarius ¶ 11 (Exhibit E).

the Board this fall, their concurrent motion to stay was ignored by the Board, presumably because they were deemed not to be in 'physical custody.' *See* Mesa Aff.  ¶¶ 7-10 (Ex. F).

Other Petitioners have inquired to the Board and have similarly been advised that they would not be eligible to even submit emergency stay motions because they are not in 'physical custody'; they have been told that such motions by individuals not in physical custody of ICE or whose deportation is not "imminent" will not be considered or ruled upon.  *See* Piereson Aff. ¶¶ 11-12 (Ex. G); *see also* Affidavit of R. Linus Chan ¶ 13 (Exhibit B) (discussing difficulty and uncertainty of meeting "imminent removal" requirement).

While 'non-emergency' stay motions exist, they provide no meaningful relief in circumstances here because, absent this Court's order, Petitioners could be ordered by ICE to leave the country at any time due to having volunteered for Operation Indonesian Surrender. The Petitioners seek a stay to be in effect until their motions to reopen are granted, and therefore filing a non-emergency stay motion — which the Board generally rules on simultaneously with the motion to reopen — is not an adequate option or remedy.  *See* Greenstein Aff. ¶¶ 20-21 (Ex. C).

Moreover, the BIA's demonstrated failure to timely adjudicate stay motions before the removals are carried out (*see* Affidavit of Trina Realmuto ¶¶ 2–3 [Dkt. No. 49-5]) and its track record of summarily denying motions to stay without adequate consideration of the merits (*see* Chan Aff. ¶¶ 16-17 (Ex. B)) are especially problematic here, where the basis for the motion is changed country conditions: if the person is already removed to the country where the conditions will lead to their persecution, the harm has already occurred.

The BIA stay practice is simply not sufficiently protective in a situation like that of Petitioners, where their program and orders of supervision were abruptly terminated and they would face obvious and grave danger if removed.  In short, without the A-Files and time to

prepare motions to reopen, the administrative process will remain illusory.  Moreover, the stay must continue through the final administrative adjudication of the motion and a request for a stay in the circuit.  The BIA stay process is both in design and in practice inadequate to protect Petitioners.

Finally, Respondents argue that there is no "plausible inference of prejudice" here.  Opp. at 17.  But because this Court is not being asked to review the individual CAT and asylum claims, the relevant inquiry is not whether Petitioners can show that each will ultimately prevail in their individual motions to reopen.  Rather, it is whether Petitioners will be prejudiced by the failure to provide them with a meaningful opportunity to present their claims.  See *Hamama II* (rejecting government's argument that to assess prejudice, the district court should examine the individual cases).  The prejudice here is the denial of a meaningful opportunity to submit a motion to reopen.

Nor is there any question that Petitioners, as Indonesian Christians, have colorable claims to present in their motions to reopen.  Petitioners have produced voluminous, unrefuted evidence that country conditions in Indonesia have changed so that Christians are subject to a greater risk of religious persecution.  This evidence includes the affidavit of Professor Jeffrey A. Winters [Dkt. No. 49-6], sworn expert testimony which documents in painstaking detail, citing more than 100 sources, the demonstrable persecution, torture and other harms against Christians in Indonesia.  *See, e.g., Salim*, 831 F.3d at 1138-1139 (9th Cir. 2016) (noting dangers Indonesian Christians face and finding that petitioner met the changed circumstances requirement).

### III.   The Remaining Preliminary Injunction Factors Concerning Harm And The Public Interest Strongly Favor Petitioners.

The final factor in evaluating the motion for preliminary injunction militates sharply in favor of Petitioners.  After decades of peaceable residence and steady Christian worship,

Respondents have advanced no rationale for the need to remove these particular individuals on any specific timetable, and no harm that would result from Respondents allowing Petitioners to advance their claims that outweighs the risk of persecution and torture.  The harm that Petitioners would face in being returned to a nation where anti-Christian persecution and violence is on the rise, is evident from the record.

## CONCLUSION

For the foregoing reasons, the Petitioners ask this court to grant their Motion for Preliminary Injunction and extend the stay through the adjudication of their motions to reopen.

Respectfully Submitted,

PETITIONERS/PLAINTIFFS

By Their Attorneys,

*/s/ W. Daniel Deane*
W. Daniel Deane (BBO# 568694)
Nathan P. Warecki (BBO# 687547)
NIXON PEABODY LLP
900 Elm Street
Manchester, NH 03101

Ronaldo Rauseo-Ricupero (BBO# 670014)
Sydney Pritchett (BBO# 694195)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000
rrauseoricupero@nixonpeabody.com

Lee Gelernt (pro hac vice)
Anand Balakrishnan (pro hac vice)
American Civil Liberties Union Foundation
125 Broad St, 18th Flr
New York, NY 10004-0000

Matthew R. Segal (BBO# 654489)
Adriana Lafaille (BBO# 680210)
American Civil Liberties Union of Massachusetts
211 Congress St.
Boston, MA 02110

(617) 482-3170

Gilles Bissonnette (BBO# 669225)
American Civil Liberties Union of New Hampshire
18 Low Avenue
Concord, NH  03301
Date: January 5, 2018                              (603) 224-5591

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 5, 2018.

*/s/ W. Daniel Deane*