# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

LIA DEVITRI, et al.,

        Petitioners/Plaintiffs,

v.

CHRIS M. CRONEN, et al.
        Respondents.

Case No. 0:17-cv-11842-PBS

**SWORN DECLARATION OF R LINUS CHAN**

I, R Linus Chan, under oath, depose and say as follows:

1. I am a resident of Minnesota and make this declaration based upon my own knowledge. This declaration is made in support of Petitioners in the above-referenced matter. I have personal knowledge of the facts in this sworn declaration and am competent to testify to them.

2. I received my J.D. from Northwestern University School of Law, cum laude, in 2002. I have worked at the National Immigrant Justice Center as a Senior Staff Attorney at the Detention Project, as a staff attorney and adjunct instructor at the DePaul Asylum and Immigration Law Clinic, and finally as an associate professor of clinical law at the University of Minnesota School Of Law, James H. Binger Center for New Americans. I have been at my current position for the past 4 years.

3. I have worked exclusively as an immigration attorney since 2004 and my practice has focused on removal defense for those in immigration detention, which normally consists of representation in front of the Executive Office of Immigration Review Immigration Courts. This work includes appeals to the Board of Immigration Appeals.

4. During the course of my career I often meet people in immigration detention with final orders of removal whose only remedy from deportation would be to reopen their prior immigration proceedings.

5. I find these cases to often be difficult, time-consuming and fraught with difficulties.

6. On the logistical side these cases sometimes are dealing with proceedings that are very old, and where the documentation and factual recall of events may be missing or incomplete. Often people may be re-detained far from where the original proceeding occurred, which increases the difficulty in getting accurate documentation and information about a prior proceeding. For instance, a person may be detained in Minnesota facing imminent removal, but their removal proceeding may have occurred in Atlanta or California. In those instances, inquiries and filings must be made in the court of the original proceedings, and must be made by physical US mail as the immigration court system does not have electronic filing.

7. These cases often move extremely quickly as many people do not become aware of the imminent nature of their removal until they are detained, and often it becomes a scramble to both figure out when removal would occur and how much time an individual has to file the motion to reopen.

8. By statute and regulation, when a case is older than 90 days, the only means in which to reopen the case (other than based on an extraordinary *sua sponte* authority) would be to file a motion based on changed country conditions that give rise to persecution. These type of motions are incredibly fact-specific, and require copious research about the status of foreign countries. This can become more complicated when the country involved is not an English speaking one, and information may be more difficult to come by.

9. For this type of case time is of the utmost importance, as the filing of a Motion to Reopen does not stay removal. 8 C.F.R. 1003.2(f). This often requires juggling between considerations of making sure the record is as complete as possible to get a favorable decision on either the instant motion or a motion to stay removal, and making sure the filing is done in time to actually allow relief for the client.

10. The Board of Immigration Appeals has created their own stay system which is outlined in the Board of Immigration Appeals Practice Manual. This manual outlines the Board procedures for requesting stays of removal. Board of Appeals Practice Manual Chapter 6.4.

11. First, in order for the Board of Immigration Appeals to consider a stay request, there must be a pending Motion before the Board. This means that one must file the stay only after one completes the actual Motion to Reopen. Second, Motions to stay are automatically categorized into two types of motions, emergency and non-emergency.

12. In my experience a non-emergency stay, which is defined as a stay request where a person is not detained, or detained where removal is not "imminent" is rarely acted upon by the Board of Immigration Appeals.

13. In order to qualify as an "emergency stay" the Board requires that removal be "imminent." This requirement can be hard to meet as the individual ICE officers often do

not provide clear or even accurate assessments of removal. Officers often are either not sure of removal dates, or inform attorneys that such information is not allowed to be disclosed. The Board will at times ask for the contact information of the deportation officer, so that they may call them directly.

14. On several occasions during the course of using the emergency stay procedures, I have had individual deportation officers not be available to speak to the Board and the Board would be forced to try and reach another officer in the office. There is usually a frantic atmosphere of calling the emergency stay line (which is only staffed until 5pm EST) and calling ICE officers to make sure that they are receiving communications from the Board. On the handful of occasions where a stay was granted, there has been instances where ICE has had to pull the client from the bus or plane that was due to depart at the last minute.

15. I have filed several different stay motions based on motions to reopen to the Board of Immigration Appeals, and while I have received grants of emergency stays they are not usually based on changed country conditions, but rather on situations that involve the vacatur of criminal convictions.

16. In the context of stay motions for changed country conditions, I recently filed a request that I believe absolutely met the requirements for a motion to reopen. The Board denied the stay request in one line, the entirety of the decision only states, "After consideration of all information, the Board has concluded that there is little likelihood that the motion will be granted. Accordingly the request for a stay of removal is denied."

17. It is my opinion that the stay procedures in place at the Board do not adequately prevent erroneous deportations, as the Board only considers "emergency" stays with imminent removals where information about actual departures can be difficult to obtain. Moreover, because the stay decisions are only considered and made once departure is "imminent" there is not adequate consideration of the merits of the decision.

Signed under the pains and penalties of perjury on 4th day of January 2018.

_____
Linus Chan