# EXHIBIT C

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIA DEVITRI, et al.,<br><br>       Petitioners/Plaintiffs,<br><br>v.<br><br>CHRIS M. CRONEN, et al.,<br><br>       Respondents/Defendants. | Civil Action No.17-cv-11842-PBS |

### AFFIDAVIT OF ILANA ETKIN GREENSTEIN, ESQ.

I, Ilana Etkin Greenstein, under oath, depose and say as follows:

1. I am an adult resident of Massachusetts and make this affidavit based upon my own knowledge. This Affidavit is made in support of Petitioners/Plaintiffs in the above-referenced matter. I have personal knowledge of the facts in this Affidavit, and would be competent to testify thereto.

2. I am an experience immigration law practitioner, and have served as an attorney in Boston for close to two decades. I have handled proceeding before the Boston Immigration Court, the Board of Immigration Appeals, U.S. District Court and the U.S. Court of Appeals for the First, Second and Eleventh Circuits. In addition to handling immigration cases of all kinds, I have routinely served as a mentor to *pro bono* attorneys who seek to represent indigent individuals through law firms or other voluntary programs.

3. I have filed well over a hundred motions to reopen during the course of my career, including dozens based on changed country conditions, and have, in certain circumstances, also filed motions to stay removal pending adjudication of those motions to reopen both before Immigration Court and the Board of Immigration Appeals.

4. In September 2017, I began serving as Senior Technical Assistance Attorney at the Immigration Justice Campaign, a joint initiative of the American Immigration Council (AIC) and the American Immigration Lawyers Association (AILA). AILA is the largest nationwide association of immigration attorneys in the United States, and it serves as a professional organization for practitioners, and as a liaison with federal immigration authorities such as the Department of Homeland Security and the Department of Justice, as an advocacy group for immigration policy issues, and as a technical support and assistance organization for those involved in the immigration system. It works closely with other major immigration law groups, including the American Immigration Council (AIC) and the American Civil Liberties Union's Immigrants' Rights Project (ACLU).

5. AILA and the AIC became aware of the Operation Indonesian Surrender and the government's unfair policy of attempting to remove individuals prior to their ability to file their colorable motions to reopen during the course of the present litigation.

6. Once this Court stayed Petitioners/Plaintiffs' removals, AILA, along with AIC and the ACLU, committed substantial resources to helping the Petitioners/Plaintiffs find counsel to be effectively represented. AILA made this commitment because it recognizes that it is a vital to public policy for individuals to both be granted the time to file motions to reopen, and for those motions to be effectively advanced before the immigration courts.

7. I have now been involved with screening each of the Petitioners/Plaintiffs' underlying cases, and, based on my extensive experience in immigration law, my review of the country conditions described in the Affidavit of Prof. Jeffrey Winter and other sources, I believe that the Petitioners/Plaintiffs have viable claims to reopen their immigration cases based on the changed conditions in Indonesia, and that if properly prepared, those motions will provide Petitioners/Plaintiffs with a viable avenue of relief from removal.

8. One week after the evidentiary hearing in this matter, AIC organized a training session for motions to reopen, and solicited from help including the AILA's New England Chapter, the New Hampshire Bar Association, the Association of Pro Bono Counsel, the ACLU's Immigrants' Rights Project network; those calls for help resulted in nearly 100 individuals participating in overview sessions.

9. However, after describing the amount of work required to prepare a reasonably strong motion to reopen, approximately 30 attorneys agreed to take cases.

10. Those attorneys then were invited to screening sessions held in Boston and New Hampshire, and representation for Petitioners/Plaintiffs was facilitated.

11. As part of the training and mentoring I have been performing, I have advised *pro bono* counsel that filing a motion to reopen without having reviewed the underlying administrative record should only be done if absolutely necessary to preserve a client's rights. Reviewing the administrative record below is particularly important in changed country conditions cases: in order to understand what has 'changed' from the original decision, it is important to know what evidence was presented to the Immigration Court in the first instance. Most crucially, in the absence of the record an attorney cannot fully understand the full range of relief that might be available to petitioner, and potential waiver is a real concern.

12. Additionally, a motion to reopen is a 'one-shot' motion that is decided on the papers, without oral argument or opportunity for supplementation, which is why strength of the submission in the first instance will largely determine whether the motion will be granted.

13. As I understand it, all of the clients who are participating in the mentoring program submitted Freedom of Information Act (FOIA) requests requesting copies of their "A

files" shortly after the evidentiary hearing.  To the best of my knowledge, DHS has not produced any of the documents requested in the FOIA requests.

14. I also understand that this Court ordered DHS to produce and serve copies of the A files upon the Petitioners/Plaintiffs in October.  To the best of my knowledge, DHS has not complied with that order.

15. Moreover, due to the age of the cases, with the original asylum cases generally heard in the late 1990s and early 2000s, contacting prior counsel to obtain copies of the case files has proven largely fruitless.

16. Additionally, while I understand that Executive Office for Immigration Review's Records of Proceedings for some (though not all) of the Petitioners/Plaintiffs have been assembled at the Boston Immigration Court, access is only by appointment and the records cannot be replicated in any way, which has proven very cumbersome. For example, it is impossible for *pro bono* counsel to photocopy or otherwise record any documents for future reference.  This means that it is impossible for them to reference documents while consulting with clients.  This makes working with the record very laborious, time-consuming, and ineffective.  In short, having the option to review the Record of Proceedings is not a substitute for having a copy of the A file which counsel can have on hand for reference throughout the course of his/her representation.

17. Nearly all of Petitioners/Plaintiffs in this action would be filing their motions to reopen before the Board of Immigration Appeals.  I have reviewed the Declaration of Christopher Gearin of the Board of Immigration Appeals' "Emergency Stay Unit", which confirms that, pursuant to BIA Practice Manual at § 6(d)(i) "an emergency stay request may be submitted only when an alien is in physical custody and is facing imminent removal."

18. Because Petitioners/Plaintiffs are not in physical custody, that mechanism is not available to them.

19. The BIA Practice Manual at § 6(d)(ii) references a "non-emergency" stay, but non-emergency stays are not effective in this circumstances because, absent this Court's order, Petitioners could be ordered by ICE to leave the country at any time, but they would not be deemed to be "in physical custody" for "emergency motion" purposes. In my experience, when the BIA deems a motion a "non-emergency," it adjudicates it in conjunction with the underlying claim. The Board, in other words, adjudicates the motion for a stay at the same time that it adjudicates the motion to reopen, essentially rendering the stay request moot.

20. As such, this Court's injunction is the only way to protect these Petitioners/Plaintiffs from imminent removal to Indonesia where the country conditions are extremely hostile to Christians and could put them in danger of persecution, torture, or death.

Signed under the pains and penalties of perjury this 5th day of January, 2018.

>
> */s/ Ilana Etkin Greenstein, Esq.*
> Ilana Etkin Greenstein, Esq.