Case 1:17-cv-11842-PBS   Document 72-4   Filed 01/05/18   Page 1 of 5

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIA DEVITRI, et al.,

                    Petitioners/Plaintiffs,

v.                                                     Civil Action No.17-cv-11842-PBS

CHRIS M. CRONEN, et al.,

                    Respondents/Defendants.

## SWORN DECLARATION OF IRA J. KURZBAN

I, Ira J. Kurzban, under oath, depose and say as follows:

1. I am a resident of Florida and make this sworn declaration based upon my own knowledge. This declaration is made in support of Petitioners in the above-referenced matter. I have personal knowledge of the facts in this sworn declaration and am competent to testify to them.

2. I received J.D. and M.A. Degrees from the University of California, Berkeley and a B.A. with honors from Syracuse University, graduating Phi Beta Kappa. I am an honorary fellow of the University of Pennsylvania School of Law. I have also received the Wasserstein Fellowship at Harvard University Law School.

3. I have been a partner in the law firm of Kurzban, Kurzban, Weinger, Tetzeli, & Pratt P.A. of Miami, Florida for over four decades and I am chair of the firm's immigration department.

4. I am a past-national President and former General Counsel of the American Immigration Lawyers Association. I am also a Fellow of the American Bar Association. I have been named by the National Law Journal as one of the top twenty immigration lawyers in the United States. I have been listed for over thirty years in the Best Lawyers in America for my work in immigration and employment law, and, Lawdragon has listed me as one of the top 500 lawyers in the United States. I also have received the Lawyers of the Americas Award for my work on behalf of human rights in this hemisphere given by the University of Miami, the Jack Wasserman Award for excellence in federal litigation, the Edith Lowenstein Memorial Award for excellence in the advancement of immigration law given by the American Immigration Lawyers Association, and the Carol King Award for my efforts in immigration law given by the National Lawyers Guild. In 1986, I was selected by Newsweek Magazine in their commemorative issue on the hundredth anniversary of the Statue of Liberty as one of 100 American heroes for my work on behalf of immigrants.

5. I was also selected by Esquire Magazine as part of America's New Leadership Class. I have been named to Who's Who in America, Who's Who in American Law and Who's Who in the World. I was also named as one of the world's twenty-three most highly regarded corporate immigration lawyers in the International Who's Who of Corporate Immigration Lawyers. Both myself individually and my firm have been listed in Chambers as first-tier lawyers in immigration law since 2010.

6. I have litigated over fifty federal cases concerning the rights of aliens including *Jean* v. *Nelson*, *Commissioner* v. *Jean*, and *McNary* v. *Haitian Refugee Center, Inc.* which I argued before the United States Supreme Court. I have also litigated numerous cases under the Alien Tort Claims Act and the Torture Victim Protection Act, including one that resulted in a $500-million judgment against Jean-Claude Duvalier, the former dictator Haiti.

7. In my immigration practice of almost forty years, I have litigated hundreds of cases before the immigration courts in the United States. I have represented hundreds of asylum applicants and other applicants seeking relief in the immigration courts. During my career, I have filed thousands of motions before the immigration court including motions to reopen, motions to reconsider, motions to suppress evidence, motions to change venue and other motions pertinent to the defense of a respondent in a removal proceeding, including a motion to reopen due to changed country conditions.

8. As a result of my work in immigration court and before the federal courts on behalf of refugees, I was the first recipient of the Tobias Simon Pro Bono Award presented by the Chief Justice of the Florida Supreme Court. I was also one of the founders of the Berkeley Law Foundation, a non-profit organization providing scholarships for law students and law graduates engaged in significant legal assistance programs throughout the United States. I was also one of the founders of Immigrants' List, the first pro-immigrant political action committee in the United States.

9. I am an adjunct faculty member in Immigration and Nationality Law at the University of Miami School of Law and have lectured and published extensively in the field of immigration law, including articles in the Harvard Law Review, San Diego Law Review.

10. I am the author of *Kurzban's Immigration Law Sourcebook*, the most widely used one-volume immigration source in the United States that has been cited authoritatively by numerous Federal Circuit Courts of Appeals, the Board of Immigration Appeals and state Supreme Courts.

11. I make this affidavit to explain the legal work that is required to prepare an adequate Motion to Reopen in an immigration case and to explain why the current system for seeking and obtaining an emergency stay of removal from an immigration judge (IJ) or the Board of Immigration Appeals (BIA or Board) is neither reliable nor effective to ensure that Petitioners' stay motions will be heard and adjudicated while a Motion to Reopen is pending.

12. Petitioners are the subjects of final removal orders but argue that they are now eligible for immigration relief based on changed circumstances. In this situation, the proper means by which to raise their claims before the agency is to file a Motion to Reopen with either the immigration court or the BIA, depending on the procedural history of the case. Under the regulations, it is not possible to file a bare bones motion to reopen. To the contrary, the regulations require that a motion to reopen include "the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2(c)(1). In the cases of Petitioners, this means preparing and filing an application for asylum, withholding, or the Convention Against Torture, unless one has already been filed, and all evidence showing that circumstances have changed since their last immigration hearing. It is not enough to assert changed circumstances, the circumstances must be established through evidence, which takes time to gather and assemble. *See generally* 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1). And the burden is upon the applicant to show not merely changed circumstances but significant changed circumstances in the country of persecution that would affect the applicant's case in a way that is different than his previous application.

13. Investigating and preparing the Petitioners' Motions to reopen will be time-consuming. Most were unrepresented in their removal proceedings. In many of the cases, counsel filing a Motion to Reopen based on changed circumstances will be making their first appearance on the clients' behalf. An immigration attorney who did not represent the noncitizen in the removal proceeding must obtain the complete record of prior proceedings and any new and previously unavailable evidence, all of which are necessary to permit a full assessment of a claim.

14. To adequately assess the existing record in each case, new counsel will need to obtain both the written and court hearing audio files concerning the individual's case. This includes both the A-File (the comprehensive file of a person's immigration history kept by the Department of Homeland Security) and the Record of Proceedings (the immigration court file kept by the Executive Office for Immigration Review (EOIR), which consists of the immigration courts and the BIA). The A-File is accessed by a Freedom of Information Act (FOIA), 5 U.S.C. § 552, request to the U.S. Citizenship and Immigration Service (USCIS). If a person has had any interaction with U.S. Customs and Border Protection (CBP), it is additionally advisable to file a FOIA request with CBP to obtain records from that agency's file. The Record of Proceedings is accessed by a FOIA request to EOIR. At present, USCIS has a backlog of over 35,000 FOIA requests and generally takes *several months* to produce an A-file. In my experience, EOIR requests can take several weeks to months. Records that are older can take longer than others.

15. Researching and collecting substantial new evidence to support a Motion to Reopen, particularly evidence to support a motion based on changed country conditions, can take significant time and effort both by the attorney and by the noncitizen and/or his or her family. The reopening statute requires that motions "shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B). The implementing regulations further mandate that the evidence is "material and was not available and could not have been discovered or presented at the former hearing," as well as either evidence that the

immigration judge did not "fully explain[]" the opportunity to apply for relief at the prior hearing or evidence that relief is now available due to "circumstances that have arisen subsequent to the hearing." 8 C.F.R. § 1003.2(c)(1).

16. Petitioners face imminent removal. To obtain relief from the agency to prevent their removal, they each must seek an emergency stay. But the BIA will not consider a motion for a discretionary or emergency stay unless it is accompanied by an appeal, a Motion to Reopen, or a Motion to Reconsider. It is thus not possible to file with the agency a motion for a stay of removal without also filing the motion to reopen, together with all the supporting documentation for the motion to reopen (as detailed above).

17. The filing of an emergency stay motion does not require ICE to halt a deportation. Instead, either an IJ or the BIA actually must actually grant the stay motion before ICE has a legal obligation to halt a deportation. No legal standard requires that the IJ or the BIA rule on a stay before a person is deported.

18. Attorneys seeking emergency stays of removal from immigration judges face some of the same procedural obstacles as those faced by attorneys seeking emergency stays before the BIA. These include delays in receipt of the stay motion and reluctance to rule on a stay motion until the IJ is satisfied that deportation is imminent. In addition, where a person seeks an emergency stay from an immigration court in conjunction with a motion, the timing for adjudication of the stay motion is entirely dependent on the schedule of that particular immigration judge (as opposed to any number of BIA judges who might adjudicate the stay motion). For example, if a stay motion is filed at 9:00am and deportation is scheduled for 10:00am, the immigration judge may be conducting a hearing in court and, therefore, unaware, unable, or perhaps unwilling to timely adjudicate the emergency stay motion prior to the deportation.

19. Securing an emergency stay before the BIA or immigration judge is challenging and time-consuming even for experienced immigration attorneys. Securing an emergency stay without counsel is nearly impossible. Without competent counsel to advise of the possibility of filing an emergency stay motion in conjunction with a Motion to Reopen, most pro se noncitizens will be unaware of this procedure. Even if they were aware, they must articulate legal arguments and produce new and compelling evidence. These individuals may have little or no formal education and/or face a language barrier that makes this task even more daunting.

20. In short, neither the immigration courts nor the BIA have reliable or sufficient procedures to ensure individualized assessment of the appropriateness of an emergency stay that would provide an opportunity for reasoned decision-making about whether individuals who have filed Motions to Reopen should or should not face removal while those motions are pending.

Signed under the pains and penalties of perjury this 2nd day of January, 2018.

------------------------------
IRA J. KURZBAN