UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIA DEVITRI, et al.<br><br>                               Petitioners/Plaintiffs,<br><br>v.<br><br>CHRIS M. CRONEN, et al.<br><br>                               Respondents/Defendants. | Civil Action No. 17-cv-11842-PBS |

## PETITIONERS/PLAINTIFFS' SUPPLEMENTAL SUBMISSION ON IRREPARABILITY OF HARM

In response to this Court's invitation at the Motion Hearing on January 17, 2018 [Dkt No. 81], Petitioners/Plaintiffs ("Petitioners") respectfully offer this supplement to its statement of the irreparable harm.

Petitioners have shown sufficient injury from the Respondents'/Defendants' ("Respondents") actions to justify issuance of a preliminary injunction. While injury was appropriately demonstrated on the basis of Petitioners' previous submissions[1]—particularly the risk of persecution Indonesians face and the impediments premature removal would place on access to the Motion to Reopen process and to administrative relief—the additional Affidavits attached hereto[2] further underscore that significant risk is faced by every individual Petitioner involved in this action. In particular, these additional Affidavits further support the following

---

[1] *See, e.g.*, Greenstein Aff. ¶¶ 17-20 [Dkt. No. 72-3]; Kurzban Aff. ¶¶ 19-20 [Dkt. No. 72-4]; Macarius Aff. ¶ 11 [Dkt. No. 72-5].

[2] The following Affidavits are attached hereto: Supplemental Affidavit of Jeffrey A. Winters, Ph.D. ("Supplemental Winters Aff.," attached hereto as Exhibit "A"); Affidavit of Professor Daniel Kanstroom ("Kanstroom Aff.," attached hereto as Exhibit "B"); Affidavit of Matthew L. Hoppock, Esq. ("Hoppock Aff.," attached hereto as Exhibit "C").

1

conclusions: Indonesian Christians are at risk of persecution; those individuals, like Petitioners, who have lived abroad and have been vocal in their criticisms of Indonesia's policies, are at particular risk; this risk will follow them throughout Indonesia; and there will be impediments to litigating a Motion to Reopen if Petitioners are prematurely sent to Indonesia and impediments to Petitioners' return if they win their Motions to Reopen.

As a threshold matter, the showing of harm for a preliminary injunction to issue is less than the showing required for determination of the final merits of a Motion to Reopen by the immigration courts. In deciding a preliminary injunction motion, this Court must consider "(i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." *Corp. Techs., Inc. v. Harnett*, 731 F. 3d 6, 9 (1st Cir. 2013). No "mechanical test" exists with which to calculate "the quantum of hard-to-measure harm that will suffice to justify interim injunctive relief." *Dunkin' Donuts Franchised Restaurants LLC v. Wometco Donas Inc.*, 53 F. Supp. 3d 221, 230 (D. Mass. 2014) (quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F. 3d 12, 19 (1st Cir. 1996)). "It normally suffices, however, if the movant demonstrates that its legal remedies are inadequate and it faces a substantial injury that is not accurately [measurable] or adequately compensable by money damages." *Id.* (internal quotations omitted).

The First Circuit measures harm in the context of a preliminary injunction "on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of

2

likelihood of success shown." *Braintree Labs., Inc. v. Citigroup Global Mkts. Inc.*, 622 F. 3d 36, 42-43 (1st Cir. 2010).

Moreover, the showing of harm necessary must of course be lower than that imposed by the immigration system in deciding the merits of a Motion to Reopen. The relief sought by Petitioners here is designed to give individuals the time to prepare and file their Motions to Reopen. Further demonstration of individualized harm and development of persecution claims requires access to and further review of the immigration files and Petitioners' records—which is part of the relief sought in this preliminary injunction motion. The preliminary injunction's purpose is to maintain the status quo, in order to preserve the relative positions of each party in the ongoing disputes. By way of comparison, it is appropriate to issue preliminary injunctive relief to preserve the relative leverage of parties to an ongoing business dispute. *See, e.g.*, *Axia NetMedia Corporation v. Massachusetts Technology Park Corporation*, 252 F. Supp. 3d 52, 60-61 (D. Mass. 2017) (finding irreparable harm and granting preliminary injunction where allowing a party "to duck the continued performance provision during negotiations" would improperly disturb the relative negotiating positions of the parties). The same logic applies here, where the life-or-death stakes are inarguably higher than a run-of-the-mill contractual dispute, because imminent removal to Indonesia would obliterate an individual's ability to meaningfully counter the government's deportation efforts by exercising their rights to file Motions to Reopen, or to return to U.S. soil if those Motions succeed.

Here, all Petitioners face a cognizable threat of irreparable harm absent preliminary injunctive relief. First, all of them face a substantial risk of persecution and torture upon removal to Indonesia, where Christians, as a religious minority, are subjected to intimidation and violence by militant Islamists, governmental authorities, and Indonesian security forces. *See* Winters Aff.

[Dkt. No. 49-6]; *see also* Supplemental Winters Aff., ¶¶ 16-32. The Winters Affidavits, in conjunction with Exhibits A through N to the Affidavit of Sydney Pritchett [Dkt. No. 4-1], sufficiently demonstrate the deteriorating conditions faced by Indonesia's Christian population due to increasing violence and imposition of laws that persecute religious minorities, including Christians. They further show that these risks are present throughout Indonesia.

Second, Petitioners face irreparable harm because if they are removed from the United States before they are able to fully prepare and adjudicate their Motions to Reopen with the assistance of counsel, it is unlikely that their Motions will succeed, and even less likely that they would be returned to the U.S. if they do succeed.

Even if Petitioners are theoretically able to prepare and file Motions to Reopen post-removal, such post-deportation filing will be exceedingly difficult to actually accomplish. *See* Kanstroom Aff., ¶¶ 6-7. Most obviously, Petitioners' presence in Indonesia will subject them to likely persecution and/or torture such that filing the Motion to Reopen will be functionally impossible. Additional challenges will arise in communicating with stateside counsel and immigration authorities because the individual Petitioners/Plaintiffs may be living in fear, required to travel frequently, or need to conceal their identities and intentions from hostile actors due to safety concerns. *Id*., ¶ 10.

Third, even if the Petitioners somehow won post-deportation Motions to Reopen, it is uncertain that they would actually be allowed to return to the United States. *Id*., ¶ 11; *see also* Hoppock Aff., ¶¶ 4-5. In such cases, the "successful" Petitioners would be subject to the uncertain, uneven application of the United States government's discretionary Return Policy. Kanstroom Aff., ¶ 11. Further, the individuals' efforts to return to the United States may be plagued by additional hardships imposed by a hostile Indonesian government, including

surveillance and travel restrictions. *Id.*, ¶ 13. Return would require the consent of both the Indonesian and United States governments, and facilitation by the United States government, which can be withheld without justification or recourse. Hoppock Aff., ¶¶ 5, 10-17.

Fourth, as reflected in the Supplemental Winters Affidavit and the Indonesian news articles referenced in the exhibits thereto, these Petitioners in particular, whose stories are now well-known in Indonesia due to press coverage closely monitored by the government, will face retribution by Indonesian authorities. *See* Supplemental Winters Aff., ¶¶ 5-10, Ex. A & B thereto. The Indonesian government takes an especially negative view of Indonesians who are the source of criticism of their country abroad. *Id.*, ¶ 5. The risks faced by Petitioners are exacerbated by the fact that many of them are evangelical Christians. While all non-Muslims are under serious threat in Indonesia, evangelical Christians face heightened risks because spreading the Gospel in their communities—a core part of their faith—is deemed in Indonesia to be predatory proselytizing aimed at converting Muslims to Christianity, and is a criminal act punishable by imprisonment. *Id.*, ¶ 13.

The Petitioners have, therefore, satisfied their burden of showing irreparable harm sufficient for preliminary injunction. Petitioners' removal before having meaningful access to the Motion to Reopen process will expose them all to the risk of persecution. It will also render Petitioners' theoretical access to legal remedies hollow. While the effect of denial of a preliminary injunction on individual Petitioners' futures may be difficult to determine with precision, "such effect would clearly be negative, not positive, and, therefore, adds further weight to the scale balancing in favor of preliminary injunctive relief." *Buckton v. National Collegiate Athletic Ass'n*, 366 F. Supp. 1152, 1160 (D. Mass. 1973).

Therefore, Petitioners have met the standard for a sufficient showing of harm for a preliminary injunction.

                                               Respectfully Submitted,

                                               PETITIONERS/PLAINTIFFS

                                               By Their Attorneys,

*/s/ W. Daniel Deane*
W. Daniel Deane (BBO# 568694)
Nathan P. Warecki (BBO# 687547)
NIXON PEABODY LLP
900 Elm Street
Manchester, NH 03101

Ronaldo Rauseo-Ricupero (BBO# 670014)
Sydney Pritchett (BBO# 694195)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000
rrauseoricupero@nixonpeabody.com

Lee Gelernt (pro hac vice)
Anand Balakrishnan (pro hac vice)
American Civil Liberties Union Foundation
125 Broad St, 18th Flr
New York, NY 10004-0000

Matthew R. Segal (BBO# 654489)
Adriana Lafaille (BBO# 680210)
American Civil Liberties Union of Massachusetts
211 Congress St.
Boston, MA 02110
(617) 482-3170

Gilles Bissonnette (BBO# 669225)
American Civil Liberties Union of New Hampshire
18 Low Avenue
Concord, NH  03301

Date: January 24, 2018                   (603) 224-5591

4836-6890-9146.2

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 24, 2018.

                                                           */s/ W. Daniel Deane*